## LEWIS, TRUSTEE, *v.* UNITED STATES.

1. The United States is entitled to priority of payment out of the effects of its bankrupt or insolvent debtor, whether he be principal or surety, or be solely, or only jointly with others, liable, and it is immaterial where the debt was contracted.

2. The United States was the creditor of a firm, A., B., & Co., doing business in London, and consisting of several persons, some of whom resided there. The others resided in this country, and, with another partner, constituted the firm of A. & Co. ·The members of the latter firm were duly declared bankrupt, and a trustee was appointed under the forty-third section of the Bankrupt Act of March 2, 1867. *Held*, that the relations of the bankrupt members of the firm of A., B., & Co. to the United States are the same as if they were severally liable to the United States; and that the United States

is entitled to the payment of its debt out of their separate property, in preference and priority to all other debts due by them or either of them, or by the firm of A. & Co.

3. The United States was under no obligation to prove its debt in the bankruptcy proceedings, or pursue the partnership effects of A., B., & Co. before filing this bill against the trustee; and the Circuit Court had original jurisdiction of the case thereby made, although the fund arose, and the trustee was appointed, under the Bankrupt Act.

4. A creditor holding collaterals is not bound to apply them before enforcing his direct remedy against his debtor.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

*Mr. William M. Evarts, Mr. R. L. Ashhurst,* and *Mr. W. P. Clough,* for the appellant.

*Mr. Attorney-General Pierrepont* and *Mr. R. C. McMurtrie, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This case turns upon legal propositions. There is no controversy about the facts. Jay Cooke, McCulloch, & Co., bankers, of London, were appointed by the United States disbursing agents for the Navy Department. On the 19th of October, 1873, they were indebted to the department for the balance of moneys placed in their hands for disbursement, in the sum of £131,610 9s. 8d. On or about the 20th of September, 1873, when the amount due to the department was considerably larger than that mentioned, the company placed in the hands of the United States or their agents a large amount of collaterals for the security of the debt. The United States claim the right to apply the proceeds of these collaterals to the payment of another and later debt arising in the same way. Irrespective of the collaterals, the amount first mentioned, with interest, is still due and unpaid.

The firm of Jay Cooke, McCulloch, & Co. consisted of Hugh McCulloch, J. H. Puleston, and Frank H. Evans, residents of Great Britain, and of Jay Cooke, William G. Moorehead, H. C. Fahnestock, H. D. Cooke, Pitt Cooke, George C. Thomas, and Jay Cooke, Jr., residents of the United States. For a long period previous to the time first mentioned there was a banking-house in Philadelphia under the name of Jay Cooke & Co.

The members of that firm were the seven American partners in the house of Jay Cooke, McCulloch, & Co., and James A. Garland. On the 26th of November, 1873, all the persons composing the firm of Jay Cooke & Co. were adjudicated bankrupts; and this adjudication remains in full force. This included the seven American members in the house of Jay Cooke, McCulloch, & Co. The other three partners of this latter firm are not bankrupt. Under the proceedings in bankruptcy, the defendant, Lewis, has been appointed trustee of the estates of the bankrupts of the firm of Jay Cooke & Co., and as such received and holds their several separate individual estates and assets, and the estates and assets of the firm as well. The estates of these bankrupts are insufficient to pay all their indebtedness. The United States, under the statutes in such case provided, claim priority of payment of their debt before mentioned out of the separate estates of such members of the firm of Jay Cooke & Co. as were also members of the debtor firm of Jay Cooke, McCulloch, & Co. The trustee denies the validity of this demand. The United States have instituted this proceeding to enforce it.

On the 10th of April, 1875, there was already accumulated in the hands of the trustee of the funds so claimed by the United States the sum of $267,844.80.

The Bankrupt Act of March 2, 1867, declares, that, in the order for a dividend, "the following claims shall be entitled to priority or preference, and to be first paid in full in the following order: —

"*First,* Fees, costs, and expenses of suits and of the several proceedings under this act, and for the custody of property, as herein provided.

"*Second,* All debts due to the United States, and all taxes and assessment under the laws thereof."

The fifth section of the act of March 3, 1797 (1 Stat. 515), enacts, —

"That where any revenue officer or other person hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, or where the estate of any deceased debtor in the hands of executors or administrators shall be insufficient to pay all

the debts due from the deceased, the debt due to the United States shall be first satisfied, and the priority hereby established shall be deemed to extend as well to cases in which a debtor, not having sufficient property to pay all his debts, shall make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor shall be attached by process of law, as to the cases in which a legal act of bankruptcy shall be committed."

It may be well to pause here and carefully analyze this section, and consider the particulars of the category it defines, so far as its provisions apply to the case in hand.

Those affected are persons " indebted to the United States."

This language is general, and it is without qualification.

The form of the indebtedness is immaterial.

It may be by simple contract, specialty, judgment, decree, or otherwise by record.   The debt may be legal or equitable, and have been incurred in this country or abroad.   A valid indebtedness is as effectual in one form as another.   No discrimination is made by the statute.

The debtors may be joint or several, and principals or sureties.

Here, again, no distinction is made by the statute.   All are included.   *Beaston* v. *The Bank of Delaware*, 12 Pet. 134; *United States* v. *Fisher*, 2 Cranch, 358.

There must be bankruptcy or else insolvency, as the latter is defined by the statute and the authorities upon the subject.

As bankruptcy exists here, we need not look beyond that point in this case.   Congress had power to pass the act.   2 Cranch, 396.

Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe.   *United States* v. *Wiltberger*, 5 Wheat. 95; *Cherokee Tobacco*, 11 Wall. 621.

That the facts disclosed in the record bring the case within the plain terms and meaning of the section in question, seems to us, viewing the subject from our stand-point, almost too clear to admit of serious controversy.   Affirmative discussion, under such circumstances, is not unlike argument in support of

a self-evident truth. The logic may mislead or confuse. It cannot strengthen the pre-existing conviction. 11 Wall. 621.

The statute must prevail, unless its effect shall be overcome by the considerations to which our attention has been called by the learned counsel for the appellant. They have argued their contentions with a wealth of learning and ability commensurate with the importance of the case.

We shall respond to their propositions without restating them.

The United States are in no wise bound by the Bankrupt Act. The clause above quoted is *in pari materia* with the several acts giving priority of payment to the United States, and was doubtless put in to recognize and reaffirm the rights which those statutes give, and to exclude the possibility of a different conclusion. That the claim of the United States was not proved in the bankruptcy proceedings in question is, therefore, quite immaterial in this case. *United States* v. *Herron*, 20 Wall. 251; *Harrison* v. *Sterry*, 5 Cranch, 289.

The case presented is that of a trust fund, a trustee holding and a *cestui que trust* claiming it. This gave the Circuit Court original and plenary jurisdiction. That the fund arose and the trustee was appointed under the Bankrupt Act did not affect the right of the United States to pursue both by the exercise of the jurisdiction invoked. The same remedies are applicable as if the fund had arisen and the trustee had been appointed in any other way. 12 Pet. *supra;* *Thomson* v. *Smith*, 2 Wheat. 425.

The United States were under no obligation to pursue the partnership effects of Cooke, McCulloch, & Co. before filing this bill. The bankruptcy of the American partners dissolved the firm of Cooke, McCulloch, & Co., not only as to themselves, but also, *inter se*, as to the solvent partners. In analogy to the proceeding at law, where there are joint debtors and one is beyond the reach of the process of the court, and equity has jurisdiction, a decree may be taken against the other for the whole amount due. *Darwent* v. *Walton*, 2 Atk. 510. In *Nelson* v. *Hill*, 5 How. 127, this court held that the creditor of a partnership may proceed at law against the surviving partner, or go in the first instance into equity against the representatives of the deceased partner, and that it was not necessary for him

to exhaust his remedy at law against the surviving partner before proceeding in equity against the estate of the deceased. The solvency of the surviving partner is immaterial. To the same effect are *Thorpe* v. *Jackson*, 2 Y. & C. Ex. 553, *Wilkinson* v. *Henderson*, 1 M. & K. 582, *Ex parte Clegg*, 2 Cox's Cas. 372, and *Camp* v. *Grant*, 21 Conn. 41. A court of equity will not entertain the question of marshalling assets, unless both funds are within the jurisdiction and control of the court. Adams's Eq. 6 Am. ed., 548, note; *Denham* v. *Williams*, 39 Ga. 312; see also *Walker* v. *Covar*, 2 S. C., N. s., 16; *Dodds* v. *Snyder*, 34 Ill. 53; *Herriman* v. *Skillman*, 33 Barb. 378; *Shunk's Appeal*, 2 Barr, 304; *Coates's Appeal*, 7 Watts & S. 99; *Keyner* v. *Keyner*, 6 Watts, 221. If a judgment at law be recovered against a copartnership, the separate property of each partner is alike liable to execution with the property of the partnership; and equity will not interfere, unless there are cogent special circumstances, such as have no existence here. *Meech* v. *Allen*, 17 N. Y. 300. These authorities are conclusive on the point under consideration. If there could otherwise be a doubt upon the subject, it is removed by the two statutes. The Bankrupt Law declares that the United States shall be first paid; the fifth section of the statute of 1797 enacts, that, where there is a debt and bankruptcy, they shall have priority of payment. Neither statute contains any qualification, and we can interpolate none. Our duty is to execute the law as we find it; not to make it. It would be a singular equity which would drive the appellees "beyond sea" to carry through a litigation of uncertain duration, and results against parties there before they can be permitted to proceed against the parties and property here.

It is a settled principle of equity that a creditor holding collaterals is not bound to apply them before enforcing his direct remedies against the debtor. *Kellock's Case*, 3 Ch. App. 769; *Bonser* v. *Cox*, 6 Beav. 84; *Tuckley* v. *Thompson*, 1 Johns. & Hem. Ch. 126; *Lord* v. *The Ocean Bank*, 20 Penn. 384; *Neff's Appeal*, 9 id. 36. This is admitted; but it is insisted that there are special considerations here which ought to take the case out of the general rule. We think those considerations are all of the opposite tendency. One of them is found

in the character and circumstances of a large portion of the collateral assets. The facts are set forth in the answer of the United States to the cross-bill of the appellant, and need not be more particularly adverted to. Another of these considerations applies to all the collaterals, and is conclusive. There are parties entitled to be heard touching the application of the proceeds who were not, and could not be, brought before the Circuit Court. According to the best-considered adjudications, no burden touching these assets can be made to rest upon the United States, which they are not willing to assume. Doubtless questions will arise involving much delay before the administration of the fund is completed. In the mean time, the United States cannot be barred from enforcing any remedy to which they are entitled.

The court below committed no error in holding that the preference of the United States as a creditor of Cooke, McCulloch,.& Co. applied to the separate and individual estates of the bankrupt partners, thus superseding the rule in equity recognized by the Bankrupt Act, — that partnership property is to be first applied in payment of the partnership debts, and individual property in payment of the individual debts. It is sufficient to say upon this subject that the learned and elaborate argument of the appellant's counsel in support of the opposite view overlooks the true meaning and effect of the statutes. The bankrupt parties in question were indebted to the United States, and they had separate estates. This entitled the United States to the preference claimed. One of the obvious purposes of the fifth section of the act of 1797 was to abrogate the rule insist- d upon, and it has clearly done so. The provisions of the Bankrupt Act relied upon do not, as we have shown, affect the United States. The legal relations of those parties to the United States, in this controversy, are just what they would have been if those parties were individual debtors to the United States, and the firm of Cooke, McCulloch, & Co. had never existed.

The separate and individual interest of the several partners in the partnership property of Jay Cooke & Co. can be only the share of each one of what may be left after discharging all the liabilities of the copartnership. This will be nothing,

the firm being in bankruptcy and conceded to be hopelessly insolvent.   The United States can, therefore, have no interest with respect to the administration of its affairs.   Any rights as to the collaterals held by the United States, claimed by others, must be settled outside of the present proceeding.   They cannot be adjudicated upon in this case.        *Decree affirmed.*