## AMBLER *v.* AMES.

PROMISSORY NOTES ; COLLATERAL SECURITY ; CONSIDERATION.

1. It is no defense to an action on a promissory note, that collateral
   security given in connection with a previous liability which con-
   stituted the consideration for the note sued upon, has not been
   returned or accounted for to the defendant.
2. Nor is it a defense to such a suit that the original liability was not
   evidenced by any promise or obligation in writing by the
   defendant.
3. Where a husband procures a loan of money to be made to his wife,
   his subsequent promise to pay the indebtedness is not *nudum
   pactum.*

No. 59.   Submitted June 14, 1893.—Decided September 21, 1893.

HEARING on a motion by the defendant for a new trial
on bill of exceptions, in an action upon a promissory note.
*Judgment affirmed.*

THE COURT in its opinion stated the case as follows :

The suit in this case was upon a promissory note for $600,
executed by the defendant, Augustine I. Ambler, dated May
1, 1888, and payable in one year thereafter, with interest at
six per centum per annum, to the order of the plaintiff, John
G. Ames.   The execution of the note was admitted, and the
defense was alleged want of consideration, and such intoxi-
cation on the part of the defendant at the time of the execu-
tion that he did not know what he was doing.

It appears from the record, and it is not contested, that
about four years before this transaction—that is, about Feb-
ruary 15, 1884, Ambler had applied to Gen. S. S. Henkle, who

was then attorney for him and for his wife, Mrs. Rosaline N. Ambler, to procure a loan of $1,000 for them, which loan he said they needed greatly, as they were out of money. Gen. Henkle procured the desired loan from the plaintiff, Ames, in the name of Mrs. Rosaline N. Ambler, and gave to Ames as collateral security for its repayment, a certificate for one hundred shares of the capital stock of a certain "Vapor-Fuel Company," a corporation of the State of Virginia, organized, it seems, for the development of an invention for which letters-patent had been issued to Ambler, but the capital stock of which, so far as it represented the letters-patent and the invention of Ambler, stood exclusively in the name of his wife, and is stated to have been the equal property of the husband and wife. It appears, also, that all the property, real and personal, in which the two had any interest, stood in the name of Mrs. Ambler alone. The loan was to be repaid in ninety (90) days, with interest at the rate of eight (8) per centum; and there was a provision in regard to the sale of the stock deposited as security in the event of failure of such repayment.

There does not seem to have been any note or obligation in writing executed either by Mrs. Ambler or her husband for this loan; but the record contains two memoranda in reference to it, purporting to have been executed by Gen. Henkle as their attorney.

The loan was not repaid within the time specified or at all; and the stock deposited as security seems to have become valueless, and no disposition was made of it. The matter seems to have been permitted to rest, so far as the record shows, until about the time of the execution of the note in suit, when the original indebtedness had become apparently barred by the statute of limitations. The parties then came together at the office of Gen. Henkle, where the amount of the indebtedness was figured up, interest on the loan of $1,000 being calculated to that date at the rate of eight (8) per centum, although the memoranda referred to as having been signed by Gen. Henkle, as attorney for Ambler and his wife,

did not provide specifically or in terms for eight (8) per centum *until paid;* and for the whole amount so found to be due, two notes were drawn, one for $600, payable in one year thereafter to the order of Ames, with interest thereon at the rate of six per centum per annum, which is the note now in suit; and the other for $766.66, payable in two years after date, to the order of Ames, with interest at six per centum per annum. These two notes were signed by Ambler, and indorsed or guaranteed by Gen. Henkle, and thereupon delivered to Ames.

Thus far there would seem to be no controversy in regard to the facts. But when the $600 note became due and remained unpaid, and this suit instituted upon it, came to trial, Ambler testified, that he had received no part of the original loan of $1,000; that his wife had applied the whole of that sum to her own personal use, and for the benefit of her separate estate—although he does not state specifically how this was done; and that at the time of his execution of the note in suit he was so intoxicated that he did not know what he was doing. He also testified at the trial that these two notes were not given in discharge of the claim of $1,000 against Mrs. Ambler; that no mention was made of this claim at the time of the execution of the notes; and that the plaintiff had never discharged the claim against Mrs. Ambler. Each and all of these statements of Ambler are contradicted by Gen. Henkle; and as they were submitted to the jury, and were passed upon by it, they are of no importance here, further than that it may be proper to say, that the defendant has discredited his own testimony by its hopeless inconsistency. If he was too intoxicated at the time of the execution of the notes to know what he was doing, he was incapable of remembering what was said or done, or what was omitted to be said or done, at that time. If, on the other hand, he could remember what was then said or done, or omitted to be said or done, he was not too intoxicated to know what he was doing. Mr. Ambler's testimony does not commend itself to the court any more than it did to the jury.

Upon the conclusion of the testimony in the case, two instructions were asked on behalf of the defendant, as follows:

1. "If the jury believe from the evidence that the only consideration for the note sued on in this case is that on February 15, 1884, a loan was made by Mr. John Sherman, for the plaintiff, to Mrs. Rosaline N. Ambler, then and now the wife of the defendant, of $1,000, and that she deposited certificates of stock as collateral security for such amount, no part of which has been returned or accounted for to her, and that there was no written promise or obligation to pay the same except the contract signed by S. S. Henkle, produced in evidence, then such consideration was not sufficient to support the said note, and the verdict must be for the defendant."

2. "If the jury believe from the evidence that the only money advanced which is claimed to be the consideration for two notes, one of $600, dated May 1, 1888, and one of $766.66, dated May 1, 1888, was $1,000 in 1884; that there was no promise to pay more than six per cent. interest thereon, then there would be no consideration for more than the $1,000 with interest at six per cent. to support the said two notes, which would not be sufficient to justify the recovery for the amount of said notes, and the verdict should be for the defendant."

These instructions the court refused to give; and the refusal is now alleged as error, exception having been duly reserved. The court instructed the jury "that, if they believe from the evidence that the said two notes of May 1, 1888, were given by the defendant in satisfaction and discharge of the claim of the plaintiff against Mrs. Ambler on account of the loan of $1,000 to her February 15, 1884; and that at the time of giving said notes he was sober and well knew and understood what he was doing, then the plaintiff was entitled to a verdict for the amount claimed in his declaration ; but, if they did not so believe, then the defendant was entitled to a verdict." To which charge of the court, except the last clause, the defendant excepted. Only the purport of the charge is given, not the specific words used; but this is of no consequence.

The verdict of the jury and the judgment of the court were for the plaintiff for the amount claimed; and the case is now here on appeal.

*Mr. W. Willoughby* for the appellant:

1. The court below charged the jury that if the two notes of the appellant, one of which is the note in suit, were given in satisfaction and discharge of the claim against Mrs. Ambler, the plaintiff would be entitled to a verdict. This is directly against the doctrine of the case of *Williamson* v. *Hill*, 3 Mackey, 100, where it is held that the consideration must be some benefit to the promissor himself. The simple discharge of the claim against Mrs. Ambler is of no benefit to the appellant.

2. A claim against Mrs. Ambler on account of this loan would be utterly void and could not be the foundation of any claim against her, or of any settlement of any such charge. *Yale* v. *Dederer*, 22 N. Y., 450; 78 Am. Dec., 226; *Dobbin* v. *Hubbard*, 17 Ark., 189; 65 Am. Dec., 432, note; *Burton* v. *Marshall*, 4 Gill, 487; 45 Am. Dec., 171. A mere moral obligation is not sufficient to support a contract, except in cases where a good or valuable consideration has once existed. *Cook* v. *Bradley*, 7 Conn., 57; 18 Am. Dec., 79; 27 Am. Dec., 286, note.

*Mr. Walter H. Smith* for the appellee:

1. The appellee suffered a loss or disadvantage by releasing his claim against the wife of appellant, which is a sufficient consideration to support the note in suit. *Glasgow* v. *Hobbs*, 32 Ind., 440; *Sykes* v. *Laffery*, 27 Ark., 407; *Carr* v. *Carr*, 14 Miss., 513; *Stebbins* v. *Smith*, 4 Pick., 97; *Smith* v. *Weed*, 20 Wend., 184; *Farmer* v. *Stuart*, 2 N. H., 97; *Herrman* v. *Johnson*, 14 Johns., 466.

2. The original loan was made to Mrs. Ambler at the request of the appellant. Such being the case, the notes afterwards given by the appellant were founded upon a sufficient

consideration.    1 Addison Cont., 24; 1 Wm. Saunders, 264;
*Allen* v. *Davidson*, 16 Ind., 416 ; *Maurer* v. *Mitchell*, 9 Watts
& Sergt., 69.

Mr. Justice MORRIS delivered the opinion of the Court :

With reference to the first instruction requested by the de-
fendant, which seems to have been intended mainly to raise
the question whether the previous unsatisfied loan to the wife
was a sufficient consideration for the subsequent promise by
the husband, the court would have been justified in refusing
it in any case, inasmuch as the references in it to the collat-
eral security given for the loan and the absence of any written
promise of repayment were utterly misleading and calculated
to divert the attention of the jury to matters that had no bear-
ing whatever upon the issues in suit.    In a suit upon a prom-
issory note it is entirely immaterial that collateral security
given for the note has not been returned or accounted for to
the debtor.    If the security has been used and proceeds
realized from it, it is, of course, competent for the defendant
so to show, and to claim credit upon the indebtedness to the
extent of such proceeds.    But it is no defense to a suit at law
that collateral security has not been returned or accounted
for, especially when such collateral security has become worth-
less, as testified in this case.    *Lewis* v. *U. S.*, 92 U. S., 618 ;
*Bonser* v. *Cox*, 6 Beavans, 84 ; *The Ocean Bank*, 20 Penn.,
384.

Much less is it any defense to such a suit, when the collat-
eral security in question was not given with the note in suit,
but in connection with a previous liability which constituted
the consideration for such note.

Neither is it any defense in the present case that the origi-
nal liability, which constituted the consideration for the note
in suit, was not evidenced by any written promise or obliga-
tion on the part either of the defendant or of his wife.    There
is no law to require a promise in writing for the validity of
any such liability.    And even if there were such a law, and

such original liability were invalid in consequence of the absence of a writing to that effect, it is not apparent how such an invalidity could affect a subsequent obligation in writing having for its consideration a genuine loan and a genuine liability for money lent, and not the form of such a liability.

For these reasons we would be entirely justified in regarding the first instruction asked for by the defendant as improper to be granted. But assuming that it is intended to raise the question of consideration, pure and simple, which is raised by the charge of the court—whether the previous loans to the wife, unsatisfied and unpaid, as testified to in this case, was a sufficient consideration for the subsequent promise of the husband, upon which this suit is based—we may consider it in connection with the charge of the court.

The uncontradicted testimony is that the original loan of $1,000 by the plaintiff to Mrs. Ambler was made at the express request and solicitation of the defendant; that it was sought for the joint benefit of the husband and the wife; and that it was made upon the faith of property belonging equally to both. In fact, the plain indications are that, though the loan was in form to the wife, it was made in fact to the husband. The defendant's statement that he received no part of the money, even if true in fact, and that the whole amount was used by his wife for her own use and for the benefit of her separate estate, is entirely irrelevant. The lender had nothing to do with the disposition of the money after it came into the hands of the borrower. The transaction was one originated by the husband, where he solicited a loan for the mutual benefit of himself and his wife, where he put his wife forward as the nominal borrower because she was the nominal owner of the property of both. We are not required by any known rule of law to hold that such a transaction as this does not constitute a sufficiently valid consideration for the subsequent promise of the husband to pay the amount of the loan; and until we are confronted with such a rule, we shall hold the liability to be in accordance with the plain principles of justice and good conscience.

If the husband was in fact, although not in form, the original obligor, his subsequent assumption of the obligation would be binding upon him. If he was originally only a joint obligor, his subsequent assumption of the whole obligation would be equally binding. If, on the other hand, the obligation was the genuine obligation of the wife in the first instance, and she contracted with his consent, her debt became his debt; and, in fact and in law, he, and not she, was liable, unless the indebtedness was contracted with "*relation to her sole and separate property.*" There is no pretence that the original loan had relation to the sole and separate property of Mrs. Ambler, or to relieve or aid it in any way. On the contrary, so far as the record shows, the loan to her was for the benefit of herself and her husband in reference to such matters as the husband is usually required by law to provide for. The contract with her was a contract which could scarcely be enforced against her or her separate property, except, of course, so far as the collateral security was concerned. It was to all intents and purposes the contract of the husband, collaterally secured by her, not by a pledge of her own separate property, but by a pledge of property that was hers only jointly with her husband.

But we may even go one step further. If we assume that the original liability in this case was the genuine liability of the wife with relation to her separate property, and not in any legal sense whatever the obligation of the husband, still the relations of husband and wife are such in law, and their mutual rights and liabilities are such, that although under the Married Women's Act of April 10, 1869 (Rev. Stat. U. S. for the District of Columbia, Secs. 729, 730), she may contract in such manner that neither he nor his property shall be bound by her contract, and her contract shall not be enforced against him, yet it does not follow that, for benefits, real or assumed, that may accrue to him, he may not assume her contracts or liabilities. This is not the case of assuming the indebtedness of another person. Husband and wife still remain one in law; and they have such mutual rights in the

property of each other, and the husband's liabilities especially remain such, that we would hesitate in any case to hold that a husband's voluntary assumption of his wife's contracts and liabilities, accompanied by his solemn promise in writing to discharge them, was without consideration, and therefore null and void, and not binding upon him.

The defendant's first exception, based upon the refusal of the court to grant the first instruction asked by him, as well as his exception to the charge of the court in that connection, we regard as untenable.

We attach no importance to the suggestion that the original indebtedness in this case had been barred by the statute of limitations, and therefore could constitute no valid consideration for the defendant's promise. This suggestion is distinctly antagonistic to the principle upon which every new promise to pay a barred indebtedness has been sustained.

The second instruction, and the exception to the refusal to grant it, are intended to raise the question, whether, even if the consideration for these notes was in itself good and sufficient, it was adequate, inasmuch as the original obligation, if it bore interest at all, bore interest at eight per centum only until maturity, and thereafter interest should be calculated only at the rate of six per centum per annum, whereas, in the calculation made at the time when the two notes were given, interest was charged at the rate of eight (8) per centum per annum from the date of the loan (February 15, 1884) to the date of the notes (May 1, 1888). To this contention there are several answers, any one of which would be sufficient. It is enough here to state that, if there were any force at all in the position, it would not be tenable in the present case, for the simple reason that only one of the notes is in suit here, and that an indebtedness of $1,000, without any interest whatever, is ample consideration for a note of $600. The fact that there is another note outstanding is of no consequence in this suit; for it is not a question of usury, but one of adequacy or inadequacy of consideration.

We are very decidedly of opinion that the rulings of the

court in this case were right, and that the judgment ought to be affirmed. It is, therefore, affirmed, with costs.

*Affirmed.*