## In re STORK CONTRACTORS' EXPORT CORPORATION.

## Petition of DIRECTOR GENERAL OF RAILROADS.

(District Court, S. D. Florida.  July 17, 1922.)

Bankruptcy ⚖️349—Claim of Director General for demurrage after bankruptcy disallowed.

At the time of its bankruptcy a corporation had certain lumber in course of transportation by the Railroad Administration, which unloaded the lumber on its own ground and several months later sold it. *Held* that, while demurrage until unloading, and the cost of unloading were proper claims against the estate, a charge for storage as demurrage and at the demurrage rate after bankruptcy was not allowable as a prior or preferential claim or debt due the United States, under Rev. St. § 3466 (Comp. St. § 6372); also that the Director General was chargeable with the fair value of the lumber at the time of bankruptcy.

In Bankruptcy.  In the matter of the Stork Contractors' Export Corporation, bankrupt.  On petition by the Director General of Railroads for review of order of referee.  Affirmed.

Herbert Lamson, of Jacksonville, Fla., for trustee.

Doggett, Christie & Doggett, of Jacksonville, Fla., for petitioners.

CLAYTON, District Judge.  This cause is now heard upon the petition of the Director General of Railroads for and on behalf of the United States for review of the order of the referee made January 27, 1922.  There are two claims here involved; one on behalf of the Atlantic Coast Line Railroad for demurrage and storage charges on seven carloads of lumber, from March 1, 1920, to June 30, 1920.  The other claim on behalf of the Director General of Railroads grew out of a shipment of lumber amounting to $9.20, plus 28 cents war tax; another claim for freight charges amounting to $182.08, plus $5.47 war tax; and another for unloading charges, $141.12, freight and switching charges, $203.07, and demurrage and storage charges, amounting to $3,662.50, making a total of $4,927.22.

The referee allowed the claims of the Director General, totaling $723.50, of these charges, but disallowed the other items of the claim. The complaint of the petition for review is that the referee erred in confining the allowance to the petitioner to that portion of this claim which accrued prior to the adjudication in bankruptcy, and further in holding that the fair value of the lumber in the hands of the Director General at the time of the adjudication in bankruptcy should be deducted from the amount payable to the Director General, the petitioner.  The referee allowed the Director General the sum of $1,264.72, less the fair value of the lumber that the Director General had in his possession or under his control at the date of the adjudication in bankruptcy, making the $723.50 above stated.

On October 23, 1919, the involuntary petition was filed against the bankrupt; on December 31, 1919, it was adjudicated a bankrupt; on December 31, 1919, the order was made referring the matter to the referee, and on February 10, 1920, the first meeting of the creditors

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was held, and the trustee was selected by the creditors. On August 20, 1920, the Director General filed his proof of debt on behalf of the government of the United States, making claim therein for an indebtedness due from the bankrupt of a total of $4,714.67. On December 30, 1920, the trustee filed objections to the allowance of the claim. Eventually the claim was amended, so as to bring the items thereof for certain freight, demurrage, labor in unloading cars, storage, war tax, switching charges, and an undercharge on the shipment of lumber, up to $4,927.32.

On the hearing, January 19, 1921, the claimant asserted that the charges made in the proof of debt were authorized and covered in Tariff I. C. C. No. A–131 of Lumber Tariff No. 5, page 43, and item 14 and I. C. C. No. U. S. 1 and rules 2 and 7 of A. C. L. Demurrage and Storage Tariff No. I. C. C. No. B–1119, and in effect at the time the services were rendered, and that the United States government took charge of this and the other railroads on December 28, 1917, and operated them until March 1, 1920.

In the amended proof of debt, item No. 1 is an undercharge for a shipment of lumber amounting to $9.20 and war tax of 28 cents, earned by the Railroad Administration in September, 1919. Item No. 2 is the freight charges, amounting to $182.03 and the war tax of $5.47, also earned during such last month named. The unloading charges of $141.12 were earned prior to and on October 6, 1919. The charges for demurrage and storage were asserted in the claim to have begun to accrue on September 22, 1919, and to have ended on February 28, both inclusive, of the year 1920.

The insistence of the Director General is that section 3466 of the United States Revised Statutes (Comp. St. § 6372) provides the rule that should be followed is passing on the claim of the Director General, and not section 64 of the act of 1898 relating to bankruptcy (Comp. St. § 9648), as amended. The contention of the Director General is that the referee should have based his decision upon section 3466 of the United States Revised Statutes (U. S. Comp. Stat. § 6372) and the Bankruptcy Act, construed in pari materia, and further that the Bankruptcy Act of 1898 does no more than to reaffirm United States Revised Statutes, § 3466, and qualifies it to the extent only that labor liens under the Bankruptcy Act are given priority to the prior claims of the United States. Lewis v. U. S., 92 U. S. 618, 23 L. Ed. 513, In re Stoever (D. C.) 127 Fed. 394, and 7 C. J. 333, are cited.

I might agree that these authorities sustain the general proposition that the Bankruptcy Act has not superseded the original statute giving priority to debts due the United States, accrued and provable debts; but I do not believe that either Congress meant to say, or that the Supreme Court has held, that such a claim as that presented here for storage charges, as a demurrage penalty after the adjudication in bankruptcy, shall be considered as a prior or preferential claim or debt due the United States. It does not seem to me that this precise question has been passed upon, although the referee, in his opinion, stated that the act (of 1898) "takes into consideration, we think, the whole range of indebtedness of a bankrupt, national, state and individual," and quoted

from Guarantee Title & Trust Co. v. Title Guarantee & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706. And in the same connection it is there said that special reference is made in this Guarantee Title & Trust Company Case to Lewis v. U. S., 92 U. S. 618, 23 L. Ed. 513, and U. S. v. Herron, 20 Wall. 251, 22 L. Ed. 275.

However, the facts of this case are that the Director General had in his possession, or under his control, the cars which contained the lumber; that he charged demurrage as demurrage while the lumber was on the car; that he charged for unloading these cars and placing the lumber on the grounds under his control. These charges the referee allowed, and correctly so; but as to the charges for the lumber that the Director General stored on the premises under his control the referee declined to allow more than reasonable storage and held that the bankrupt estate was not to be penalized by the charge for actual storage at the rate pertaining to the cars proper for actual demurrage. In my opinion this ruling should be sustained.

I cannot believe that the act of Congress contemplated to make it possible for the Director General in such cases as this to absorb a large portion of the estate of the bankrupt, the assets actually belonging to the creditors of the bankrupt after the payment of just liens, priorities, and costs. I do not believe that the law authorizes, or that the courts can sanction, such a doctrine.

In good conscience the Director General should have timely asserted his claim for reasonable storage charges. So much of his claim as was reasonable the referee allowed. It must be remembered that the lumber, when it was sold by him, brought some hundred and fifty dollars only, owing perhaps largely to the probable fact that it had become weather-worn and had deteriorated greatly while in the custody of the Director General. His claim for storage of the lumber as a demurrage penalty cannot be sustained. It is not a "debt due the United States." It could not be held at common law to be a debt, and therefore it cannot come under the doctrine of "debitum in præsenti, solvendum in futuro." See U. S. v. State Bank, etc., 6 Pet. 29, 8 L. Ed. 308, 312.

Accordingly, decree and order will be entered approving the finding and conclusion of the referee.