THE NATIONAL CITY BANK OF NEW YORK, Plaintiff and Appellee, v. BÁRBARA F. WIDOW OF ECHEVARRÍA ET AL., Defendants and Appellants.

No. 6867. Argued May 6, 1936.—Decided February 2, 1937.

*Francisco de la Torre* and *Arturo O'Neill* for appellants. *Fiddler, Córdova & McConnell* and *José G. González* for appellee.

Mr. Chife Justice Del Toro delivered the opinion of the Court.

The plaintiff requested the District Court of San Juan to render judgment against the defendants ordering them to pay three thousand dollars, interest and costs, on the basis of the following facts:

"I. That the plaintiff is a banking association . . .

"II. That on August 7, 1929, the defendants Bárbara F. widow of Echevarría and Francisca L. widow of Fernández, as well as Miguel Echevarría, jointly and severally signed and delivered to the American Colonial Bank of Porto Rico, for value received, a promissory note for the sum of $3,000, payable on September 15, 1929, with interest at 9% per annum from and after maturity . . .

"III. That subsequently the said American Colonial Bank of Porto Rico indorsed and delivered to the plaintiff The National City Bank of New York, the said note, of which the said plaintiff is now the owner and holder.

"IV. That Miguel Echevarría died leaving as his sole, legitimate and universal heirs, his widow, Bárbara F. widow of Echevarría in the usufructuary portion corresponding to her, and his legitimate children Angela, Lydia, José, Miguel, and Idalia Echevarría Fernández who form and constitute the Heirs of Miguel Echevarría.

"V. That the said promissory note was due on September 15, 1929, and that none of the defendants, nor any person in their name, has paid the amount of the said note, either in whole or in part, or the interest due on the said sum from November 5, 1929, in spite of the demands made on them by the plaintiff.

The indorsement of the note, appearing at the foot of the said instrument, is as follows:

"Pay to the order of the National City Bank of New York without recourse.—American Colonial Bank of Porto Rico—(Signed) R. Torres Ramis, Assistant Cashier.—April 22, 1930."

Francisca Látimer widow of Fernández and Bárbara Fernández widow of Echevarría answered separately, the latter in her own name and in the name of her minor children.

They admitted the truth of the allegations of the first and second paragraphs of the complaint, and as to the third, the indorsement of the promissory note to the plantiff and the latter's possession. They denied that the plaintiff was the owner of the note. The defendant Mrs. Látimer admitted the fourth paragraph. The other defendants all admitted it, but alleged that they were not in fact the heirs of Mr. Echevarría because they had not accepted their inheritance.

All of the defendants admitted that the note had become due on September 15, 1929, but they denied that it had not been paid, alleging on the contrary that it had been paid by a certain assignment which Echevarría had made before his death to the American Colonial Bank. They also alleged this assignment as a special defense. As a special defense they also alleged that the complaint did not state sufficient facts to constitute a cause of action.

The case went to trial and the court rendered judgment for defendant Angela Echevarría Fernández who repudiated the paternal inheritance, and for the plaintiff as to the other defendants whom it ordered to pay, jointly and severally, the amount claimed, interest and costs, the judgment to be effective as to the minors only as against the property which they had inherited from their father.

Feeling aggrieved the defendants who were prejudiced by the judgment appealed from it to this court. They maintain that the district court erred, (1), in overruling their defense that no cause of action was alleged, and (2), in holding, upon all the evidence, that the plaintiff bank was not barred, as assignee of the American Colonial Bank, from proceeding to collect the amount owed and secured by the assignment which the debtor Echevarría made to the American Colonial Bank.

In arguing their first assignment the appellants maintain that the complaint does not state a cause of action because the indorsement of the promissory note does not meet the requirements of the Code of Commerce on the mat-

ter. They cite Section 533 of the said code, which requires that the indorsement of drafts and promissory notes to order be made in the same manner as that of bills of exchange, Section 461 which determines that title to bills of exchange shall be transferred by indorsement, and Section 462 which sets out the requisites of an indorsement, to wit:

"1. The name and surname, firm name, or title of the person or company to whom the bill is transferred. 2. The form in which the assignor acknowledges the consideration of the purchaser, as stated in Sub-division 5 of Section 444. 3. The name and surname, firm name, or title of the person from whom it is received, or to the account of whom it is charged, if it is not the same person to whom the bill is transferred. 4. The date on which it is drawn. 5. The signature of the indorser, or of the person legally authorized to sign for him, which shall be stated in the subscribing clause."

They also maintain that the promissory note could not be indorsed because it was already due when its transfer was attempted. They cite Section 466 of the Code of Commerce which provides that: "Bills of exchange not issued to order can not be indorsed, nor those which have fallen due or are damaged. The transfer of ownership shall be lawful by the means established in the common law; and if, however, an indorsement is made, it shall have no further force than that of a simple assignment."

Comparing the indorsement with Section 462 of the Code of Commerce, we find that the only requirement which was not fulfilled was the second. It does not appear that it was for "value received" or for "value on account" or for "value understood".

Is the transfer thereby rendered ineffective? In the first place not only the indorsement but also the transfer of the promissory note were expressly admitted in their pleadings by the appellants. And in the second place this Court in referring to this same Section 462 recently said, through Mr. Justice Wolf:

"We have the idea that to a very large extent this provision (subdivision 4, supra), of the Code of Commerce had for ordinary business purposes, by custom, interpretation or otherwise, become obsolete at the time of the execution of the indorsement in question. For the future the new Code of Commerce has obviated this kind of discussion." *Treasurer* v. *Suau, Fiol & Co.*, 49 P.R.R._____.

The court refers to the Uniform Negotiable Instruments Law which was approved as Act No. 17 on April 22, 1930, by virtue of which Titles X, XI, and XII of the Code of Commerce, which comprised Sections 353 to 566, were repealed and substituted. In accordance with the law now in force, an instrument is negotiated when it is transferred from one person to another in such a manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery. The indorsement must be written on the instrument itself or upon a paper attached thereto, the signature of the indorser, without additional words, being sufficient. Sections 383 and 384 of the Code of Commerce, 1932 Ed.

It is true that while the appellants accepted the existence of the indorsement and the delivery of the promissory note, they denied that the plaintiff was the owner of the same. That, however, does not mean failure to state a cause of action on the part of the plaintiff, which expressly alleged in its complaint that it was the owner and proved that it had in its possession the instrument, indorsed to it by its owner, because if the indorsement in the form shown, in accordance with the law then in force, was not sufficient in itself to convey title, it was sufficient to confer on plaintiff a commission to collect, and the plaintiff was therefore properly before the court in the exercise of the said commission.

In the case of *Royal Bank of Canada* v. *Balle*, 33 P.R.R. 944, 948, this court said:

"Now, if the *lex loci solutionis* is applicable, as the appellant contends, and it should be concluded that the law of Porto Rico gov-

erns in determining the effect of the indorsement, the question would arise as to whether, the indorsement being without date, the ownership should not be considered as conveyed, but that it was only a commission to collect. This same question came up in the case of *Noriega & Alvarez* v. *Cruz & Co., Ltd.*, decided July 14, 1924, *ante*, p. 530, but a final determination of the point was postponed until some case of more importance should 'serve as a stimulus to more thorough investigation by counsel of the subject matter.' In point of fact this is not a 'case of more importance' as contemplated by the court. Counsel here consider the question superficially and, besides, it is not necessary to decide it in order to settle the controversy, for even admitting that the ownership was not conveyed, it would follow that the plaintiff bank which held the instrument was commissioned by Edward Jolles & Co., Inc., to collect it and had authority to bring the suit.''

And in *Cintrón & Aboy* v. *Solá*, 22 P.R.R. 245, it said:

"The plea made before this court that the facts alleged in the complaint do not constitute a cause of action falls of its own weight, for whether the indorsement to Cintrón & Aboy be considered as a commission to collect or whether they be regarded as Sorba's assignees, they may exercise the same rights as he had, including the right to sue on the note, as they are doing. A cause of action exists.''

■ The first error assigned, then, was not committed. Nor was the second. The appellants, who contended in the district court that the transaction made by Echevarría with his creditor the American Colonial Bank, assigning to it his interest in the property of the Miramar Realty Company Ltd., operated as a payment of the promissory note, now contend merely that the effect of the said assignment to secure the debt represented by the note cannot be other than to postpone collection until the security is liquidated.

From the document reciting the contract the scope of which is under discussion we copy the following:

"That having agreed to secure the payment of the said obligations by the assignment to the American Colonial Bank of Puerto Rico for its own benefit and the benefit of the other banks, of all interest and benefit which corresponds to him in the said company, he does so in accordance with the following clauses and conditions:

"*First:* Miguel Echevarría Navarro, with the express consent of his wife Bárbara Fernández de Echevarría, to secure each and every one of the obligations described in the preceding fourth paragraph,

"ASSIGNS AND TRANSFERS to the American Colonial Bank of Porto Rico all his right, interest and right of action in the benefits or dividends which the partners of the Miramar Realty Co. Ltd. may decide to divide or distribute among themselves either in money or in lots or property rights, at any time, whether before the dissolution of the said company, or as a result of the same, authorizing the other partners of the said firm and the firm to pay, execute, and transfer directly to the American Colonial Bank of Porto Rico, the corresponding amount or share.

"*Second:* This assignment is made to the American Colonial Bank of Porto Rico for its own benefit and the benefit of the Banco Popular of Puerto Rico and the Bank of Nova Scotia, as Trustee for the said banks, and in proportion to their respective credits, the same to remain in full force and effect until all the obligations above described shall have been totally cancelled in which case this assignment shall be cancelled."

After a careful study of the document itself and of the arguments of the appellants, we are convinced that their contention is untenable.

What the creditor received by virtue of the assignment was security. It neither expressly nor tacitly bound itself to postpone the direct collection of its credit until the liquidation of the security. A similar situation was decided by this court adversely to the contentions advanced by the appellants in the case of *The National City Bank of New York* v. *District Court*, 47 P.R.R. 122, as follows:

"Here, however, the pledgee elected to file a personal action against the defendants, and this it had a right to do. We find nothing in Section 1773 or in any other part of the Civil Code which makes it incumbent upon the owner of a pledge to sell the article pledged before filing a personal action. Upon the failure of the pledgor to pay the note at its maturity, a cause of action arose in the plaintiff to proceed against the defendants and their property. In this regard the case is similar to *Fernández* v. *Luyando* and *Luyando* v. *Díaz,* decided on May 11th, 1934, the only existing difference being that in those cases the property involved was real and in

832

the present case it is personal. Section 1758 of the Civil Code and perhaps some of the succeeding Sections show that a mortgage and a pledge are both collateral securities for the performance of a principal contract.

"The general jurisprudence in the United States supports these conclusions, that is to say that a person who has a principal obligation secured by a pledge or collateral is not bound first to proceed against the pledge or collateral, but may bring a personal action against his debtor. *Lewis Trustee* v. *United States*, 92 U. S. 618, 622; *Germania Savings Bank* v. *George Peuser*, 40 La. Ann. 796, citing the previous case; *Merril* v. *National Bank of Jacksonville*, 173 U. S. 140; note to *Robinson* v. *Hurley*, 79 Am. Dec. 500; 49 C. J. 987 *et seq.* See also *Baldrich* v. *Rivera*, 32 P.R.R. 781."

The judgment appealed from is affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.