### In re WESTERN IMPLEMENT CO.

(District Court, D. Minnesota. January 6, 1909.)

1. INSOLVENCY (§ 119*)—DISTRIBUTION OF ESTATE—PRIORITIES—"DEBTS OWING TO STATE"—"DEBT."

Money due the state of Minnesota for binding twine manufactured by the state in its penitentiary and sold is a "debt," and a debt owing to the state within the meaning of Rev. Laws Minn. 1905, §§ 4618, 4633, which gives priority in distributing the estate of insolvents to "debts owing to the United States and to the state."

[Ed. Note.—For other cases, see Insolvency, Dec. Dig. § 119.*

For other definitions, see Words and Phrases, vol. 2, pp. 1864–1886; vol. 8, p. 7628.]

2. STATES (§ 21*)—CONSTRUCTION AND OPERATION OF CONTRACTS—CONTRACTS MADE IN GOVERNMENTAL CAPACITY.

The state of Minnesota in the manufacture of binding twine in its state prison and in the selling of the same to the general public under

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an express statute authorizing such sale is engaged in the performance of a governmental function, and not merely in a private commercial enterprise.

[Ed. Note.—For other cases, see States, Dec. Dig. § 21.*]

3. INSOLVENCY (§ 119*)—DISTRIBUTION OF ESTATE—PRIORITIES—DEBTS DUE TO STATE.

Under the provisions of the Minnesota insolvency law, Rev. Laws, Minn. 1905, §§ 4618, 4633, giving priority to debts owing to the state, it is immaterial that a debt due the state arose under statutes enacted subsequent to such insolvency law.

[Ed. Note.—For other cases, see Insolvency, Dec. Dig. § 119.*]

4. BANKRUPTCY (§ 350*)—CLAIMS—PRIORITIES UNDER LAWS OF STATE—"CORPORATIONS"—"PERSONS."

Under Bankr. Act July 1, 1898, c. 541, § 1a, cls. 6, 19, c. 541, 30 Stat. 544, 545 (U. S. Comp. St. 1901, p. 3419) which define "persons" as including corporations and "corporations" as meaning "all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships," a state is a person, and under section 64b (5) is entitled to priority for a debt due it from the estate of a bankrupt which is given priority by its own insolvency law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*

For other definitions, see Words and Phrases, vol. 2, pp. 1608–1621; vol. 8, pp. 7619–7620; vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

On Petition to Review an Order of the Referee.

Edward T. Young, Atty. Gen., and George W. Peterson, Ass't. Atty. Gen., for State of Minnesota.

M. H. Boutelle and N. H. Chase, for the Trustees.

PURDY, District Judge. This is a petition to review an order of the referee in bankruptcy in the above-entitled matter in which he held that the state of Minnesota was not entitled to priority as to its claim against the estate of the Western Implement Company. The referee made his order refusing priority to the claim of the state upon an agreed statement of facts which, so far as the same are material to a review of the referee's order, are as follows:

The Western Implement Company, a corporation organized under the laws of the state of Arizona, was adjudicated a bankrupt in the above-entitled court in an involuntary proceeding in bankruptcy on the 29th day of October, 1906. Prior to the date of its adjudication, the bankrupt had been engaged in the business of selling farm implements and machinery, binding twine, and vehicles at retail, having its principal place of business in the city of Minneapolis, Minn., with branch yards or houses at some 15 different points in the states of Minnesota, North Dakota, and South Dakota. At the time of its adjudication as a bankrupt, receivers were appointed by the court, who immediately took possession of the merchandise, including farm implements, machinery, wagons, binding twine, etc., in the various yards or branch houses of the bankrupt, and on December 10, 1906, trustees in bankruptcy were duly appointed and qualified, who thereupon took possession of the property in question. On or about the 8th day of May, 1906, the Western Implement Company and Henry Wolfer, as warden of the Minnesota State Prison, entered into a written contract

under and pursuant to section 5448, c. 105, of the Revised Laws of Minnesota of 1905, whereby the Western Implement Company agreed to purchase and take of the warden of the Minnesota State Prison, and the warden agreed to sell and deliver to the said Western Implement Company, f. o. b. Stillwater, Minn., certain binding twine made in said prison, of the kinds and amounts and for the prices stipulated in said contract. Thereafter and prior to the adjudication in bankruptcy, there were shipped and delivered to the bankrupt, f. o. b. Stillwater, Minn., under the terms and conditions of said contract, 69,300 pounds of standard twine, 5,000 pounds of white sisal twine, 1,000 pounds of pure manilla twine, and 1,000 pounds of manilla twine, in the total amounting at the agreed purchase price of the several kinds of twine specified in the contract, to the sum of $6,728.75, and of the reasonable value thereof. That on or about the 5th day of February, 1907, a claim for said sum of $6,728.75, with interest, signed "Minnesota State Prison, Henry Wolfer, Warden," was filed in the matter of the above-named bankrupt, in the office of O. C. Merriman, referee in bankruptcy, in and for said 4th division, wherein said bankruptcy proceedings were pending, proof in the matter of said claim being made by Henry Wolfer as warden, Minnesota State Prison, Stillwater, in the county of Washington, district and state of Minnesota. That thereafter, to wit, on the 13th day of April, 1907, said claim was withdrawn, without the knowledge or consent of the trustees in bankruptcy of the said Western Implement Company, and was then and there amended by said claimant by the insertion of an allegation to the effect that said claim was entitled to priority, by virtue of the fact that it represented a debt due to the state of Minnesota; and thereupon said claim was again filed with said referee in bankruptcy as and for a priority claim in the matter of said bankruptcy proceeding. That thereupon the said trustees in bankruptcy duly entered their objection to the allowance of said priority claim, on the ground that the same was not entitled to priority under the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), and the several acts amendatory thereof. The estate of the bankrupt in the possession of its trustees, or to them in any wise accruing, was insufficient to pay over 50 per cent. of the claims already filed, proven, and allowed in the matter of the estate of said bankrupt, and certain of the claims theretofore filed, proven, and allowed in the matter of the estate of said bankrupt represent indebtedness contracted by said bankrupt subsequent to the execution of the contract for binding twine with the warden of the Minnesota State Prison, made and entered into on the 8th day of May, 1906, and subsequent to the shipment and delivery of a large portion of the binding twine sold to the Western Implement Company under said contract. That the contract for the sale of the binding twine, or a certified copy thereof, was never filed in the offices of the various registers of deeds, or with the various town and village clerks at any of the points in the states of Minnesota, North Dakota, and South Dakota in which the branch houses and yards of said bankrupt were located. That the sales of binding twine made to the Western Implement Company under said contract were made under and subject to the rules and regulations of the Minnesota State

Prison governing sales of binding twine. That the Minnesota State Prison is a public prison, of the state of Minnesota, and, as such, is one of the institutions of the state, is the property of the state, and all the binding twine therein manufactured is the property of the state of Minnesota, and all moneys paid for such twine are the property of said state. That Henry Wolfer, as the warden of the Minnesota State Prison, is a person with whom and in whose name contracts for the sale of binding twine are made, and said warden pays monthly into the treasury of the state of Minnesota all sums received by him on account of the sale of binding twine, and that the state of Minnesota is entitled to any and all sums realized upon any of the claims for the sale of binding twine herein referred to, by way of dividends or otherwise, whether said claim is allowed as a priority claim or otherwise. That the sale of the binding twine in question was made under and pursuant to section 5448 of the Revised Laws of Minnesota of 1905.

It conclusively appears from the agreed statement of facts that the state of Minnesota is the real party in interest; in other words, that the debt due from the Western Implement Company at the time it was adjudicated a bankrupt was due and owing to the state of Minnesota. The first question for determination is whether this claim of the state of Minnesota is a debt within the meaning of the state insolvency laws, which purport to give to the state priority in the payment of debts due the state. The several provisions of the Minnesota statutes having a direct bearing upon this question are as follows:

"4618. Proof of Claim—Order of Payment.—No claims or demands except debts owing to the United States or to the state, or taxes or assessments against the debtor or the property assigned, shall be paid, unless proofs thereof verified by the creditors be presented to the assignee. After payment of the charges and expenses of making the assignment and executing the trust, he shall pay the debts of the assignor in the following order: (1) Debts owing to the United States and to the state, and all taxes and assessments against the debtor or the property assigned, shall first be paid in full."

"4633. Preferred Debts.—After payment of costs, disbursements and expenses as provided in this chapter, debts due the United States, this state, all taxes and assessments levied and unpaid, and the expenses of the assignment, the assignee shall pay in full, if sufficient then remains the claims duly proven of all servants, clerks or laborers, for personal services performed within three months preceding said assignment not exceeding fifty dollars in each case. The balance of the estate shall then be equally distributed among the general creditors, under the direction of the court." Rev. Laws Minn. 1905.

What, then, is the meaning which must be ascribed to the word "debt," as the word is used in the statutes quoted? In the case of Cole v. Aune, 40 Minn. 80, 41 N. W. 80, Judge Vanderburgh, in delivering the opinion of the court, said:

"The term 'debt' is differently defined, according to the subject-matter and language in connection with which it is used. Strictly, it denotes a sum of money due upon contract, arising from the agreement of parties."

This same definition of the word "debt" is given by Blackstone in his Commentaries, vol. 3, p. 54, and has been approved in numerous decisions in which it has become necessary to define the strict legal meaning of this word. Testing the claim of the state by this definition, is it possible to escape the conclusion that this claim against the West-

ern Implement Company which is now being asserted by the State of Minnesota is a debt due to the state of Minnesota? But it is suggested that conceding it is a debt due the state, it is not a debt due the state within the meaning of the state insolvency laws above quoted. In the case of State of Minnesota v. Bell, Receiver, 64 Minn. 400, 67 N. W. 212, it was held that moneys of the state on deposit in a state bank, when that bank became insolvent and closed its doors, were entitled to priority when a claim for such moneys was made against the receiver. If the state under its insolvent laws was entitled to priority with respect to such a debt, it is difficult to conceive of any substantial reason for denying to the state priority with respect to the debt here in question. This debt differs in no material respect from a debt due the state arising from the sale of state property, either real or personal. The binding twine before it was sold to the Western Implement Company was the absolute property of the state of Minnesota, just as certainly as was the machinery with which the twine was manufactured. Its sale and delivery to the Western Implement Company at and for the prices specified in the written contract created a debt and obligation on the part of that company just as effectually as did a deposit of the state moneys in the City Bank of Minneapolis in the Bell Case, supra. The language of the statute is "debts owing to the United States or to the state"; and this must be held to apply to all debts, or at least to such debts as fall within the strict legal definition of this word as hereinbefore determined. In construing a similar statute of the state of Massachusetts, the Circuit Court of Appeals of the First Circuit held that a debt due to the county of Worcester for the labor of prisoners confined in the house of correction was a debt due the county, and as such was entitled to priority under the national bankruptcy act. In re Worcester Co., 102 Fed. 808, 42 C. C. A. 637. I am therefore of the opinion that the debt due the state of Minnesota for binding twine from the Western Implement Company at the time it was adjudicated a bankrupt was a debt due the state, within the meaning of the Minnesota insolvency laws, and that such a debt would have been entitled to priority in an insolvency proceeding under the laws of this state, if those laws had not been suspended in their operation by the national bankruptcy act.

I am not impressed by the suggestion of counsel for the trustees that in the manufacture of binding twine at the state prison, and in the sale thereof to the general public, the state has embarked in a purely private enterprise, and that therefore the debts necessarily created and arising from such business transactions connected therewith should not be considered as debts due the state within the meaning of its insolvency laws. The state of Minnesota, like every other sovereign state, maintains its public institutions, such as its state prisons, in its sovereign capacity. The people of the state are taxed to support and maintain such institutions. The laws of this state, in conformity with a sound public policy, require that the prisoners be employed at hard labor during the term of their incarceration, and provide that the prisoners shall be employed in some useful occupation, in order that when they leave the institution they may be better equip-

ped for becoming useful members of society. The constitutionality of such laws regulating the conduct of state prisons and the employment of the prisoners therein, so far as I am aware, has never been seriously questioned. If the state is entitled to the labor and services of its convicts while confined in the state prison, and has authority to require its convicts to labor, to produce articles and things having some commercial value, the state must necessarily have the implied power to sell and dispose of such articles and things to the advantage of the state. In doing so, the state should be regarded as performing a governmental function, and not as being engaged in a purely commercial transaction. In my judgment, the state of Minnesota, in the manufacture of binding twine in the Minnesota State Prison at Stillwater, and in the selling of the finished product to the general public, under an express statute authorizing such sale, is engaged in the performance of a governmental function to the same extent as when engaged in selling and disposing of its public lands and the timber growing thereon; and a debt created in the one case is as much within the meaning of the insolvency laws of the state and entitled to a priority thereunder as is a debt created in the other case.

Counsel for the trustees make the further point that because the state was not engaged in the manufacture and sale of binding twine at the state prison when the Minnesota insolvency laws were enacted, allowing debts due the state a preference, debts arising from the sale of binding twine should not be considered as within the purview of those statutes. If such an interpretation were adopted, we should be required to read into the law "debts due the United States or to the state" some such qualifying language as the following, "which may arise or be created under existing laws." There is nothing in the Minnesota laws evincing a purpose on the part of the Legislature to prefer debts due the state arising under laws which were in existence at the time the insolvency statutes were enacted, over those debts due the state which should arise or be created under the authority of laws constitutionally enacted by future Legislatures. The same public policy which induced the Legislature of Minnesota in 1877 to declare in favor of a preference for debts due the state under existing laws would apply with equal force to an allowance of a preference to debts due the state under laws which should be enacted by future Legislatures. This point is, in my judgment, without merit. The manifest inequality which would result from such a construction is a sufficient refutation of the suggestion that such was the legislative intent.

The more difficult question presented for determination is whether this is a debt which is entitled to priority under any of the provisions of the national bankruptcy law. The section of the bankruptcy act of July 1, 1898, which deals with debts having a priority, is section 64, and the order of priority of the debts is therein expressly established. That section provides that the trustee upon the order of the court shall—

"pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors."

It is then provided by the same section, in subdivision "b," that:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow; (4) wages due to workmen, clerks, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

It is manifest that unless the state's claim here in controversy is within the purview of clause 5 of subdivision "b" above quoted, the claim is not entitled to priority, and the order of the referee must be sustained. In order to determine this question, we must ascertain, if possible, the precise scope and meaning of the phrase "debts owing to any person," as the same appears in clause 5. We have seen that the claim of the state is not only a "debt," but it is a debt due the state within the meaning of the state insolvency laws, and as such is entitled to priority under those laws. If, therefore, the state of Minnesota can be held to be "a person," within the meaning of clause 5 above quoted, then and in such a case this debt must be accorded a priority, and the decision and order of the referee must be reversed.

The word "persons," as defined by clause 19 of section 1 of the bankruptcy act is as follows: "(19) Persons shall include corporations"; and, again, the word "corporation" is defined by clause 6 of said section 1 of the bankruptcy law as follows:

"Corporations shall mean all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships," etc.

It cannot be doubted that a state is a "body" having some of the powers and privileges of private corporations not possessed by individuals or partnerships; as, for example, the power or privilege of perpetual succession. If, therefore, the word "persons," as employed in clause 5, includes "corporations," and the word "corporations," as used in the bankruptcy law, means "all bodies having any of the powers and privileges" of private corporations not possessed by individuals or partnerships, then it would seem to follow as a necessary and inevitable conclusion that a "state" is a "person" within the meaning of the 5th clause of subdivision "b" of the 64th section of the bankruptcy act.

Quite aside from this strictly literal interpretation by which the word "person" is held to include the "state," there are numerous other arguments and considerations which seem to me to lead inevitably to the same conclusion. In the first place, there are many authorities which hold that for certain purposes a state is often to be considered as a

corporation. As was said by the Supreme Court of New York in the case of State of Indiana v. Woram, 6 Hill, 33, 40 Am. Dec. 378:

"That the state is a corporation cannot be doubted. It is a legal being, capable of transacting certain kinds of business like a natural corporation, and as such a being is a corporation."

See, also, Abbott on Municipal Corporations, vol. 1, § 5, and the authorities there cited. If the state can properly be considered as a corporation for the purposes of maintaining an action at law or in equity, there would seem to be no good reason why it should not be considered as a corporation under a statute as broad as the bankruptcy act defining what the word "corporation" shall include.

Then, again, this construction of clause 5 is in harmony with the express provisions contained in the bankruptcy law of 1867 allowing to debts due a state a preference. Section 28 of the bankruptcy act of March 2, 1867, c. 176, 14 Stat. 531, directed that:

"(3) All debts due to the state in which proceedings in bankruptcy are pending, and all taxes and assessments made under the laws of such state shall be entitled to priority, and shall first be paid in full."

In re Mellor, Fed. Cas. No. 9,401; In re Southwestern Car Co., Fed. Cas. No. 13,192; In re Dodge, Fed. Cas. No. 3,949.

Then, again, the insolvency laws of the several states, with possibly one exception, expressly accord preferences to all debts due to the state over debts due to its citizens. From the earliest days of the government until the present time, there has been in force a statute of the United States giving preferences to debts due the federal government. Section 3466 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2314) provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

This statute was enacted on March 3, 1797, c. 20, 1 Stat. 515, and has remained in force until the present day. It expresses the general policy of this government with respect to the preference of debts due to the United States over debts due to its citizens. The various states of the Union have by legislative enactment declared the same public policy with respect to preferences of debts due the state, and this public policy of the various states has been recognized by Congress in at least one bankruptcy law, that of 1867. It is difficult to conceive that the Congress, when they enacted the national bankruptcy act of 1898, intended to render nugatory this policy of the federal and state government which had been so distinctly recognized for so many years, and that, too, by a mere failure to insert some express provision covering the subject. In my judgment, clause 5 of subdivision "b" of section 64 was intended by Congress to fully preserve not only the rights

of the several states, but the rights of the United States, with respect to priorities of debts due from bankrupt estates.

It is to be observed also that, unless clause 5 of subdivision "b" is accorded this construction, it cannot be given such a construction respecting a debt due to the United States, should such a case arise. This same clause which has been invoked by the Attorney General of the state of Minnesota to protect the priority of the state in this claim must be invoked by the United States whenever the national government seeks to prove any debt which it may have against a bankrupt estate. The bankruptcy act of 1800 (Act April 4, 1800, c. 19, § 62, 2 Stat. 36), as well as the bankruptcy acts of 1841 (Act Aug. 19, 1841, c. 9, § 5, 5 Stat. 444), and of 1867 (Act March 2, 1867, c. 176, 14 Stat. 531), § 28, expressly recognize the priority of debts due the United States, thus preserving in all of its essential features the provisions of section 3466 of the Revised Statutes relating to priorities, hereinbefore quoted. The bankruptcy act of 1898 contains no express provision preserving in so many words the priority of debts due the United States, and, if priority is to be accorded to such debts, the authority therefor must be found in clause 5, subd. "b," § 64, of the bankruptcy act of 1898. I feel satisfied that the United States must be regarded as a "person" within the meaning of that clause (In re Stoever [D. C.] 127 Fed. 394); and, by a parity of reasoning, I am forced to the conclusion that a state should likewise be regarded as a "person" within the meaning of this law.

All these considerations, taken in connection with the literal interpretation of the bankruptcy law referring to priorities, have satisfied my mind beyond all doubt that Congress intended to preserve to the states and to the United States all existing priorities with respect to debts due to them, which, under the laws of the several states and the United States, they were entitled to assert, not only at the time the national bankruptcy law was enacted, but also such priorities as should subsequently be given to the states and to the United States by their laws respectively. This conclusion, in my judgment, is amply supported, not only by a fair interpretation of the language of the law itself, but also by the other considerations which I have little more than noted, without attempting an elaborate statement of the reasons in support thereof. It follows, therefore, that the referee erred in denying to the state its right to a priority respecting this debt, and in allowing the same only as a claim of a general creditor.

The order of the referee is therefore reversed, with instructions to allow the claim a priority under clause 5 of subdivision "b," § 64, of the bankruptcy act.