## JOHN P. GALBRAITH v. J. L. WHITAKER and Another.[1]

November 29, 1912.

Nos. 17,808—(102).

**Bankruptcy — preference.**

Under section 60, subdivisions a and b of the Bankruptcy Act, as amended, where an insolvent debtor procures or suffers a judgment to be entered against himself within four months before the filing of the petition in bankruptcy, and the judgment then operates as a preference, the preference is not voidable by the trustee, unless it appears that the creditor at the time the judgment was entered had reasonable cause to believe that the enforcement of the judgment would effect a preference.

**Avoiding transfer by insolvent.**

Where, under the same scetions, an insolvent debtor makes a transfer of any of his property, and the effect is a preference of any creditor, such preference is voidable by the trustee and the amount thereof may be recovered, if it appears that the creditor receiving the preference had, at the time of the transfer, reasonable cause to believe that such transfer would effect a preference.

**Sale on execution equivalent to transfer of property.**

Where a creditor procures a judgment against an insolvent debtor, and thereafter procures execution thereon to be issued and levied on personal property of the debtor, and at the execution sale such property is sold and the proceeds of the sale paid to the creditor in satisfaction of the debt, it is held that such execution sale and payment of the proceeds thereof constitutes a transfer of his property by the debtor, within the meaning of those words as used in the act.

**Creditor put upon inquiry.**

In determining whether the creditor had reasonable cause to believe a transfer by the debtor would effect a preference, facts which are sufficient

[1] Reported in 138 N. W. 772.

to put an ordinarily prudent man upon inquiry as to his debtor's solvency charge such person with all the knowledge he could have acquired by the exercise of reasonable diligence.

**Evidence.**

The evidence did not conclusively show that defendants, at the time of a transfer by their insolvent debtor of his property, had reasonable cause to believe that such transfer would effect a preference.

Action by the trustee in bankruptcy of the Washington County Co-operative Company to recover $400, the value of property belonging to the insolvent which defendants levied on and sold upon execution, the same constituting a preference in favor of defendants, an unlawful preference alleged to have been paid defendants. The case was tried before Dickson, J., and a jury which returned a verdict in favor of defendants. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed and new trial granted.

*A. E. Boyesen and H. H. Flor,* for appellant.

*T. P. McNamara,* for respondents.

BUNN, J.

This action was brought by plaintiff as trustee in bankruptcy of the Washington County Co-operative Company to recover an unlawful preference alleged to have been received by defendants. The issues were tried and submitted to a jury, which returned a verdict in favor of defendants. Plaintiff appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

The assignments of error raise the questions of whether the trial court erred in refusing to direct a verdict for plaintiff, or in its instructions to the jury, and whether the verdict is sustained by the evidence.

The uncontroverted facts are as follows:

Defendants are in the commission business in St. Paul, and sold merchandise to the Washington County Co-operative Company on credit. This corporation was engaged in the retail business at Stillwater. On August 22, 1911, being unable to pay its debts, it exe-

cuted an assignment of all its property for the benefit of creditors to John P. Galbraith. On August 8, 1911, defendants commenced an action in the Stillwater municipal court against the co-operative company to recover the sum of $220.60, the amount of their claim for merchandise sold. An answer was interposed, and a trial resulted in a judgment against the co-operative company in the full amount of the claim. The judgment was entered September 16, 1911. Execution was issued on the judgment, and levied on September 19, 1911, on certain personal property in the possession of the assignee, which was, on October 3, 1911, sold on the execution sale for $254.70. This amount was applied by the sheriff to pay defendant's judgment and costs.

On September 20, 1911, one day after the levy, and two weeks before the execution sale, other creditors of the co-operative company filed a petition against it for adjudication in bankruptcy. On October 6, 1911, the company was adjudicated bankrupt. Plaintiff was appointed and qualified as trustee.

Plaintiff's claim is that defendants had reasonable cause to believe, at the date the judgment was entered and at the date of the levy and sale on execution, that the company was insolvent, and that the judgment and the sale constituted a preference which is voidable by the trustee under section 60, subdivisions a and b, of the bankruptcy act.[1] This section is as follows:

Sec. 60, Subd. a. "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the

---

[1] [U. S. Comp. St. Supp. 1911, 1506. See 30 St. 562; 32 St. 799; 36 St. 842.]
119 M.—29.

recording or registering of the transfer, if by law such recording or registering is required."

Subd. b. "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent, and the judgment or transfer then operate as a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property *or its value* from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

From this section it is seen that a preference is recoverable by a trustee when the following elements exist:

1. The insolvency of the debtor.

2. A preference obtained within four months prior to the filing of the petition in bankruptcy.

3. The debtor has suffered or procured a judgment to be entered against himself, or has made a transfer of any of his property, which operates as a preference.

4. The person receiving such preference, or to be benefited thereby, or his agent acting therein, has reasonable cause to believe that the enforcement of such judgment or transfer will effect a preference.

That the debtor was insolvent at the time the judgment was entered, and at all times thereafter, was established. That a preference was obtained by defendants within four months prior to the filing of the petition is also clear. The trial court held that the debtor had suffered or procured a judgment to be entered against itself, and that

the only issue for the jury was as to whether defendants had, at the time the judgment was entered, reasonable cause to believe that the enforcement of the judgment would effect a preference. The case was submitted to the jury on this theory. Plaintiff contends that the execution sale and payment of the proceeds to the creditor constituted a "transfer," within the meaning of that term as used in the section quoted, and that if defendants at the time of such sale, had reasonable cause to believe that such transfer would effect a preference, plaintiff is entitled to recover the amount thereof in this action.

If the trial court was correct in holding that the debtor had "suffered or procured" this judgment to be entered, and if there was no "transfer" by the debtor of his property, it was probably correct to instruct the jury that it must be shown that defendants, at the time the judgment was entered, had reasonable cause to believe the enforcement of the judgment would create a preference. The law is somewhat blind on this point. It says in substance: If at the time of the transfer, or of the entry of judgment, the bankrupt be insolvent, and the judgment or transfer *then* operate as a preference, and the person receiving it, or to be benefited thereby, shall *then* have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable, etc. The word "then" apparently refers to the time the judgment was entered. It would seem that a creditor may enforce a judgment entered at a time when he has not cause to believe the debtor is insolvent, though at the time he enforces it he has such cause to believe, or has actual knowledge that the enforcement of his judgment will give him a preference. But this may have been the intention of the act. It is only judgments which the debtor "suffers or procures" to be entered that are condemned by the law. As to other judgments, or as to judgments entered when the creditor has not reasonable cause to believe the debtor is insolvent, there is no preference by their enforcement that is voidable, unless it can be held that a sale of the debtor's property on an execution under any such judgment, and the payment to the creditor of his claim out of the proceeds of such sale, constitutes a transfer of his property by the debtor. If it can be so held, it is clear under the terms of the act that if the creditor has, at

the time of such transfer, reasonable cause to believe that it will effect a preference, the trustee may recover the amount thereof. The importance of this question in the case at bar, is clear, because of the evidence of facts which came to the knowledge of defendants after the judgment was entered and before the execution sale.

The law deals with transfers by the insolvent of his property, as well as with judgments suffered or procured to be entered against him. A judgment is not a lien on personal property of the debtor. It is only the enforcement of such judgment that can possibly create a preference. The mere entry of the judgment cannot. Then, as before stated, judgments against the insolvent which he does not "suffer or procure" to be entered are not within the act. These considerations are helpful in determining the intent of Congress in using the word "transfer." The law seems inefficient to accomplish the result clearly intended, the prevention of preferences, unless it can be held that a sale on execution of personal property of the insolvent and the payment from the proceeds of the creditor's claim, is a "transfer." That there is a "transfer" of property when it is sold and delivered to a purchaser at the sale, or when the proceeds of the sale are turned over to the creditor, is quite apparent. The property sold is transferred to the purchaser; the proceeds of the sale are transferred to the creditor. Prior to the sale, the property belongs to the debtor; after the sale the proceeds belong to the debtor, until the sheriff pays therefrom the creditor's claim. They then belong to the creditor. Strictly speaking the transfer is not made by the debtor; it is not his voluntary act. But the word "transfer," as used in the act, has a wide meaning. It is defined in the act itself as follows:[1] "'Transfer' shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security." It has been held that the words "as a payment, pledge, mortgage, gift or security" are illustrative only, and do not qualify the language "sale and every other mode of disposing of or parting with property." In re Stege, 116 Fed. 342. The Supreme Court of the United States, in Pirie v. Chicago Title

---

[1] [U. S. Comp. St. 1901, 3420.   See 30 St. 545.]

& Trust Co. 182 U. S. 438, 45 L. ed. 1171, in discussing the above definition of a transfer, said, at page 444: "All technicality and narrowness of meaning is precluded. The word is used ·in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished,—a preference enabling a creditor 'to obtain a greater percentage of his debt than any other creditors of the same class.' " It seems entirely reasonable to say, and we hold, that the sale·on execution and payment of the proceeds to the creditor was a means and manner by which property passed from the ownership and possession of the debtor, and that it constituted a transfer from and by the debtor of his property within the meaning of the act, as construed in the cases cited. Any other holding would permit just what the act is designed to prevent, a preference of one creditor over the others. A judgment could be procured at a time when the creditor has no reason to believe the debtor is insolvent. And then, when the creditor learns of the insolvency of his debtor, and of threatened bankruptcy proceedings, or the actual institution of such proceedings, he may collect his claim, without fear of an action to recover the amount of the preference so obtained. We cannot believe that this result was ever intended.

In view of this conclusion, it is clear that the case· was submitted to the jury under an erroneous theory, and under wrong instructions on the pivotal question at issue. Exceptions were taken to the instructions given, and to the refusal to give requested instructions which stated the law as we hold it to be. There must, therefore, be a new trial.

We are asked to order judgment in favor of plaintiff, on the ground that the evidence conclusively shows that defendants, at the time of the execution sale, had reasonable cause to believe it would effect a preference. The evidence tending to show reasonable grounds for such belief on the part of defendants is to our minds quite persuasive. The rule is that facts which are sufficient to put an ordinarily prudent man upon inquiry as to his debtor's solvency, charge such person, when they come to· his notice, with all the knowledge

he could have acquired by the exercise of reasonable diligence. Mc-Elvain v. Hardesty, 169 Fed. 31. Defendants found it necessary to bring suit against their debtor, a customer in active business, to collect an indebtedness incurred in the ordinary course of business; to procure a judgment and enforce it by execution. Their Mr. Whitaker admits that he was asked by Mr. Bristol and Mr. Rodgers, acting for plaintiff, at the time or shortly after the judgment was entered, not to levy execution, and was told that if they did "execute the judgment," bankruptcy proceedings would be begun. Mr. Whitaker communicated this threat to his attorney in Stillwater, but took no steps to ascertain if the insolvency necessary to justify bankruptcy proceedings in fact existed. The petition in bankruptcy was filed one day after the levy, and two weeks before the sale. It is strange indeed if St. Paul creditors of the debtor proceeded against did not learn of the filing of the petition. There was evidence, however, which perhaps would justify submitting this question to the jury. On the whole we do not think it is a case where judgment absolute should be ordered.

Order reversed and new trial granted.