## WHEELER v. JOHNSON.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1928.

No. 7847.

1. **Banks and banking** ⬅➡47(1)—**Bank stockholder's debt for statutory double liability has attached to it priority right of payment out of stockholder's property over his other creditors (Rev. St. Kan. 1923, 9—110, 9—156).**

Bank stockholder's debt for double liability, under Rev. St. Kan. 1923, 9—110, has attached to it priority right of payment out of stockholder's property over his other creditors, under Rev. St. Kan. 1923, 9—156, providing that transfers by stockholder after closing of bank and before payment of double liability are void.

2. **Banks and banking** ⬅➡48(1)—**Statute relating to void "transfers" by bank stockholder before paying double liability is not limited to defeating voluntary acts by stockholder (Rev. St. Kan. 1923, 9—110, 9—156; Bankr. Act, § 1 (25); 11 USCA § 1 (25).**

Rev. St. Kan. 1923, 9—156, providing that transfer of property by bank stockholder after closing of bank and before payment of double liability, under Rev. St. Kan. 1923, 9—110, is void, is not limited to defeating voluntary acts by stockholder, since word "transfers," especially in insolvency and bankruptcy proceedings, may have a very broad meaning, broad enough to include passing of property by involuntary as well as by voluntary means, in view of Bankruptcy Act, § 1 (25), 11 USCA § 1 (25), defining "transfer."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

3. **Bankruptcy** ⬅➡350—**Bank receiver's claim against bankrupt for double liability as stockholder was entitled to priority (Rev. St. Kan. 1923, 9—110, 9—156; Bankr. Act, § 64b (7); 11 USCA § 104 (b).**

Claim of receiver of insolvent bank against bankrupt for double liability on bank's stock owned by him, under Rev. St. Kan. 1923, 9—

110, 9—156, was entitled to priority, under Bankruptcy Act, § 64b (7), 11 USCA § 104 (b).

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

J. S. Patton was adjudicated a bankrupt, and F. B. Wheeler was elected trustee. Charles W. Johnson, receiver of the Frontenac State Bank, filed a claim against the bankrupt's estate, and the referee allowed the claim as a common claim only. On review, the District Court set aside the order of the referee, and allowed the claim as secured, and the trustee appeals. Affirmed.

M. B. Munson, of Pittsburg, Kan., and John B. Gage, of Kansas City, Mo. (Charles E. Whittaker, of Kansas City, Mo., on the brief), for appellant.

C. A. Burnett, of Pittsburg, Kan., for appellee.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is an appeal from an order of the United States District Court of Kansas, allowing priority to the claim of the appellee against the estate of J. S. Patton, bankrupt. The facts are undisputed:

J. S. Patton was the owner of 66 shares (par value $100 each) of the capital stock of the Frontenac State Bank at Frontenac, Kan. The bank became insolvent, and on June 4, 1926, the bank commissioner of the state of Kansas closed its doors, took charge of its property, effects, and business, and appointed appellee receiver. On the same day the receiver notified J. S. Patton of his double liability on the stock owned by him, amounting to $6,600. On June 9, 1926, J. S. Patton and his wife conveyed to the Frontenac State Bank by three quitclaim deeds several hundred acres of land lying partly in Kansas, partly in Arkansas. The deeds were duly recorded June 16, June 21, and July 30, 1926, respectively. Patton received no present consideration for the deeds, but they were made by him for the purpose of satisfying as far as possible any and all claims of the bank against him, including the double liability on his stock. On October 8, 1926, an involuntary petition in bankruptcy was filed against Patton, and on November 8, 1926, he was duly adjudicated a bankrupt. Appellant Wheeler was elected trustee of the bankrupt estate. In due time the receiver of the bank filed in the bankruptcy court proof of claim for $6,600 against Patton's estate, founded upon the double liability on Patton's stock. The proof of claim also set out the quitclaim deeds above mentioned, stating that they were securities held by the claimant for said debt of $6,600 and other obligations of Patton. The referee held that the deeds constituted voidable preferences, and allowed the claim as a common claim only, in the amount of $6,600. Upon review, the District Court set aside the order of the referee and allowed the claim as secured as to the real estate described in the deeds. This appeal followed.

The District Court found the basis for its decision in the following statutes of Kansas:

"9–110. Shareholders' Liability.—The shareholders of every bank organized under this act shall be additionally liable for a sum equal to the par value of stock owned, and no more." Rev. Stat. Kan. 1923. (L. 1897, ch. 47, sec. 10; March 11.)

"9–156. Duties of Receiver; Void Transfers.—At any time after the closing of any incorporated bank if it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to immediately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank; all sums so collected to become a part of the assets of such bank and to be distributed pro rata to the creditors thereof in the same manner as other funds: Provided, that all transfers of property by a stockholder after the closing of any such bank and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability. * * *" Rev. Stat. Kan. 1923. (L. 1897, ch. 47, sec. 55; L. 1909, ch. 59, sec. 7; March 8.)

It is conceded that under these statutes, upon the closing of the bank, the double liability of Patton on his stock became a debt to the creditors of the bank, or to the receiver representing them. The questions to be determined are: What was the character of this debt; what incidents, if any, were attached to it? Answers to these questions call for a construction of the statute, 9–156, supra, and especially of the proviso. Unfortunately, the Supreme Court of the state of Kansas has not construed this proviso. We are, therefore, called upon to exercise our independent judgment in regard to the matter.

As noted above, it is conceded that upon the closing of the bank the double liability of a stockholder becomes a debt. This being so, the proviso would seem to enact that after the arising of such debt all transfers of property by the debtor before the payment

of the debt are void as against said debt. It would seem that the lawmakers intended to associate the debt closely with the debtor's property,—so closely that no transfer of the property could separate the two until the debt was paid.

What is the relationship thus created? Is it a lien? The language of the proviso is hardly such as to indicate a lien, either fixed or inchoate. We do not think this proviso was intended simply to render void conveyances made by the stockholder in fraud of his creditors. No legislation was needed for such a purpose. The existing common law covered such contingencies. 27 C. J., p. 414, sec. 6; Diefendorf v. Oliver, 8 Kan. 365. Furthermore the proviso did not undertake to make transfers by the stockholder void as to all creditors, but only as to the creditors of the bank, to whom was owing the debt arising from the double liability.

[1] We think the language of the proviso means that the debt to the creditors of the bank, who have now become creditors of the stockholder, has attached to it a priority right of payment out of the stockholder's property, over his other creditors. This appears to have been the view of the learned trial judge whose long and intimate knowledge of the legislation of his state gives peculiar weight to his opinion on the present question. In his memorandum accompanying the order appealed from, he states his views as follows:

"Now this right of the bank and its creditors to look to the property involved for the payment of the obligations of bankrupts did not arise by reason of the conveyance made, but out of the law of the state to which bankrupts agreed when they purchased their stock in the bank, and hence the property became liable to be seized and sold to pay the debts of the bank at any time after June 4, 1926, the day the bank closed; that is to say, from that date while the bank and its creditors did not have a fixed lien upon the property, yet no other creditors of the bankrupts could have availed themselves of this property of the bankrupts until the double liability here sought to be enforced was paid. This is the clear purport of the state banking laws of this state."

It remains to consider the effect of the bankruptcy of Patton upon the status of the debt owed by him to the receiver of the bank. Section 64b of the Bankruptcy Act (11 USCA §104(b) reads as follows: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (7) debts owing to

26 F.(2d)—29½

any person who by the laws of the states or the United States is entitled to priority."

The courts have been liberal in construing this provision of the Bankruptcy Act, and have not limited its scope to cases where liens were expressly created by the state laws. In the case of In re Tidewater Coal Exchange (C. C. A.) 280 F. 648, a priority in payment was allowed to a debt owing to the United States arising out of shipments of freight by railroad during the period of federal control. The statute relied upon was section 3466, R. S. (31 USCA § 191). This statute gave priority to debts owing to the United States by insolvent debtors, and this priority was recognized by the bankruptcy court.

In the case of In re Western Implement Co. (D. C.) 166 F. 576, affirmed by this court in 171 F. 81, priority was allowed to a debt owing to the state of Minnesota under a statute of the state which provided priority of payment in full of debts owing to the United States and to the state by insolvent debtors, although no lien was established by the statute. See, also, to the same effect, In re Worcester County (C. C. A.) 102 F. 808; In re Crow (D. C.) 116 F. 110; In re Stoever (D. C.) 127 F. 394; In re Bennett (C. C. A.) 153 F. 673; In re Western Condensed Milk Co. (C. C. A.) 261 F. 62; In re E. J. Hibner Oil Co. (C. C. A.) 264 F. 667; In re Morris Bros. (C. C. A.) 293 F. 294; In re Ireland (D. C.) 4 F.(2d) 813. Fixed liens were not involved, but simply priority of payment, in a number of the above-cited cases.

[2] It is contended by appellant that the scope of the proviso is limited to defeating voluntary acts by the stockholder, as indicated by the use of the word "transfers." We do not think an argument of much strength can be based upon the supposed meaning of the word "transfers." That word, especially in insolvency and bankruptcy proceedings, may have a very broad meaning—broad enough to include the passing of property by involuntary as well as by voluntary means. See section 1 (25) of the Bankruptcy Act (11 USCA § 1 (25); Galbraith v. Whitaker, 119 Minn. 447, 138 N. W. 772, 43 L. R. A. (N. S.) 427; Grant v. National Bank (D. C.) 197 F. 581; Id. (D. C.) 232 F. 201, 217; In re Bailey (D. C.) 144 F. 214, 217; Pirie v. Chicago Title, etc., Co., 182 U. S. 438, 21 S. Ct. 906, 45 L. Ed. 1171; Golden Hill, etc., Co. v. Logue (C. C. A.) 243 F. 342, 347; Remington on Bankruptcy, § 1733 (3d Ed.). Of course, such a proviso in a state statute cannot override express provisions of the Bankruptcy Act. But, as we have above

pointed out, the Bankruptcy Act expressly preserves priorities given by state statutes.

The case of Globe Bank v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583, strongly relied upon by appellant, is not, we think, opposed to the foregoing views. In that case the Globe Bank and several other creditors of one Atkins commenced suits in the state court to set aside a conveyance as in fraud of creditors. Attachments issued. Within four months from the time these suits were commenced a petition in bankruptcy was filed against Atkins. Martin was elected trustee. The Globe Bank filed a petition in the bankruptcy court praying that its attachment lien be preserved under section 67f of the Bankruptcy Act (11 USCA § 107(f), and that it be permitted to make Martin a defendant in the suit in the state court. The bankruptcy court entered an order preserving the attachment lien, and thereafter Martin, as trustee, being duly authorized, commenced a suit in the state court to set aside the conveyance. The suits in the state court were consolidated and were successful. The proceeds of the sale of the property came into the hands of the trustee. The referee and the District Court ordered a distribution of the proceeds among those creditors only whose debts were created antecedent to the execution and delivery of the fraudulent conveyance. The Circuit Court of Appeals reversed the order of the District Court, and ordered the fund to be distributed among all the creditors of the bankrupt estate. The Supreme Court affirmed the decree. In its opinion the court pointed out that the lien of the bank was one obtained through legal proceedings within four months prior to the filing of the petition in bankruptcy, and said (page 298 [35 S. Ct. 381]):

"The suit was instituted to assert the creditors' rights against the property and thus to subject it to the payment of their claims. The banks had a right of action for this purpose, but the property was not subjected to attachment, nor was there any action seeking to enforce rights in the property until the suits were begun and that was within four months of the filing of the bankruptcy petition."

The court expressly distinguished and approved the cases of Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122, and In re Bennett (C. C. A.) 153 F. 673, saying that in those cases a specific lien existed or a preferential right existed more than four months prior to the filing of the petition in bankruptcy.

[3] The case at bar comes within the ruling in the Bennett Case, and not within the ruling in the Globe Bank Case, because the priority right of payment created by the state statute was not one obtained through legal proceedings, and it came into existence more than four months prior to the filing of the petition in bankruptcy. Whether the priority right of payment would be recognized in the bankruptcy court, if it came into existence during the four-months period, we are not called upon to determine.

Order affirmed.