JOHN M. ARNESON v. SCHEFFER & ROSSUM COMPANY.[1]

May 29, 1941.

No. 32,694.

*Louis H. Joss,* for appellant.

*J. A. Mansfield,* for respondent.

HOLT, JUSTICE.

Action to recover a preference. Defendant prevailed, and plaintiff appeals from the order denying a new trial.

James Hegland for some 30 years carried on a wholesale and retail harness business in the city of Minneapolis, and during all of that time dealt with defendant. Up to 1929 he had no difficulty

[1]Reported in 298 N. W. 705.

in meeting his obligations as they matured. But after the depression and the rapid increase of motor vehicle traffic his business became less satisfactory. Early in November, 1939, Thompson, the credit manager of defendant, called at Hegland's place of business in regard to his long overdue account with defendant. Hegland informed Thompson that he was intending to dispose of the harness business. Thompson suggested that defendant take back the collars and harnesses it had sold to Hegland and give him credit on the account for the goods so taken back. Hegland said that might depreciate the value of the business and interfere with a sale thereof. Defendant, after a few days, gave the account to attorney Wagner for collection. Wagner called on Hegland and was told that one Carlblom was intending to buy the business, provided his son-in-law, who was then ill, got well. Wagner called again on November 28, 1939, and then served summons and complaint upon Hegland to recover the account, viz., $619.63. Hegland again assured Wagner that the sale to Carlblom would go through, and then the account would be paid. Thereupon Wagner said no papers would be filed for ten days. The sale of Hegland's business, stock, fixtures, and assets to Carlblom was made by bill of sale, executed by both parties, dated December 9, 1939, for $2,174.16. In that bill of sale Carlblom agreed to assume and pay Hegland's indebtedness of $619.63 to defendant. The sale was consummated, the purchase price paid by Carlblom, as agreed—the $619.63 being paid to Wagner, defendant's attorney, on December 9, 1939. On December 21, 1939, Hegland was adjudicated a bankrupt. Plaintiff is the duly appointed trustee of the bankrupt estate. The court made findings of fact and conclusions of law in favor of plaintiff save this one: "That defendant, neither at any time before nor on December 9, 1939, had reasonable cause to believe that the said payment [$619.63] would effect a preference."

This appeal depends upon the quoted conclusion of the trial court. The motion for a new trial was in the alternative for amendments of the findings of fact and conclusions of law or a

new trial. The attorney for plaintiff concedes that all assignments of error may be discussed under the one proposition whether the quoted conclusion is right or wrong. In finding numbered five the trial court finds that certain statements made by Hegland to Thompson and Wagner were willfully false. It also appears from the other findings that the court did not accept as true Hegland's testimony of his conversations with Thompson and Wagner insofar as it differed from theirs. To this court, not seeing or hearing the witnesses named, the cold record of their testimony may not impress us in the same way as it did the trial court. It is, however, readily appreciated that one in Hegland's situation with a stock in trade inventorying $7,500 and merchandise debts of only $2,000 may have thought himself solvent when he talked to Thompson and Wagner. But he certainly could not have so believed when he closed the deal with Carlblom for but a fraction of the inventory price.

Determinative of the case is the knowledge and belief defendant had of Hegland's solvency or insolvency or could have had by such inquiry as an ordinarily prudent person would make at the time the account was paid. Defendant must be charged with what knowledge and belief its agents Thompson and Wagner possessed of Hegland's financial standing or by diligence could have obtained at that time. Thompson testified that he learned nothing from his talks with Hegland of his large indebtedness of past-due rent for the building where his business was located, nor was any indebtedness disclosed other than the merchandise account of about $2,000. Wagner's testimony was that Hegland assured him that the inventory taken showed his stock in trade and fixtures exceeded $7,500, that he owed about $2,000 for merchandise, and $3,000 back rent which he could settle for $500. Hegland also told Wagner that some time ago he had been mixed up in a crooked real estate deal, for which he had given some notes which he did not intend to pay. Hegland differed sharply with both Thompson and Wagner in respect to the overdue rent and the existence of other obligations, except Wagner testified Hegland told him he owed an

attorney $175. Neither Thompson nor Wagner knew what price the purchaser of the business, Carlblom, was to pay, nor did Hegland testify that he informed either one of the amount he was to receive from Carlblom. The trial court did not accept the testimony of Hegland as true wherein he differed from that of Thompson and Wagner. Carlblom was not called as a witness. It is clear that upon the evidence in this record the sale of the business to Carlblom could not have been set aside. There is not the slightest suggestion in the record that Carlblom was concerned in any plan to assist defendant in collecting its account.

The law applicable to the proposition before us is clearly stated by controlling authority in Grant v. National Bank, 97 U. S. 80, 81, 24 L. ed. 971, where Mr. Justice Bradley begins the opinion thus:

"Some confusion exists in the cases as to the meaning of the phrase, 'having reasonable cause to believe such a person is insolvent.' *Dicta* are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to suspect such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it,—and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the

same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose. * * *

"Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

The same view of the law was taken by this court in Galbraith v. Whitaker, 119 Minn. 447, 138 N. W. 772, 43 L.R.A.(N.S.) 427; Hanson v. Shank, 159 Minn. 278, 198 N. W. 804; Martin v. A. Y. McDonald Mfg. Co. 159 Minn. 447, 199 N. W. 176, 177, are relied on by plaintiff. In the Shank case we held that the proof disclosed that the creditor knew of facts sufficient to charge him with knowledge of his debtor's insolvency, and therefore the court erred in not granting plaintiff judgment notwithstanding the verdict. The A. Y. McDonald Mfg. Co. case is similar, in that it was held that the facts indicated that the creditor had reasonable cause to believe that the mortgage and bill of sale taken would operate as a preference [159 Minn. 450]: "The facts in his possession were such as to incite inquiry which would have resulted in exact knowledge." The findings of the trial court were held not supported by the evidence.

Plaintiff also cites Anderson v. Prosser, 157 Minn. 64, 195 N. W. 533; Buchanan v. Smith, 83 U. S. 277, 21 L. ed. 280; Wager v. Hall, 83 U. S. 584, 21 L. ed. 504, in which the findings were that the security taken or payments made were taken or made by the creditor with knowledge of facts that would cause a reasonable belief of the debtor's insolvency. In D. C. Wise Coal Co. v. Small (8 Cir.) 225 F. 524, the payment which constituted a preference

appears to have been made pursuant to a "plan" to accomplish that purpose. As before stated, there is no testimony that either Thompson or Wagner knew or had any information as to the price Carlblom was paying for Hegland's business. We do not think we are justified in overturning the trial court's conclusion that defendant neither at any time before nor on December 9, 1939, had reasonable cause to believe that the said payment would effect a preference.

Affirmed.