TITLE GUARANTY & SURETY CO. v. GUARANTEE TITLE & TRUST CO.

(Circuit Court of Appeals, Third Circuit.   November 29, 1909.)

No. 31.

1. STATUTES (§ 233*)—CONSTRUCTION—APPLICABILITY TO UNITED STATES.
    A statute is not to be construed to apply to, or to affect, any rights of the United States, in the absence of express words so providing.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 314; Dec. Dig. § 233.*]

2. BANKRUPTCY (§ 349*)—SUBROGATION (§ 7*)—DEBTS ENTITLED TO PRIORITY—DEBTS DUE UNITED STATES—RIGHT OF SURETY TO SUBROGATION.
    The provisions of Bankr. Act July 1, 1898, c. 541, § 64, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), with respect to the payment of taxes and the debts which shall have priority in the distribution of a bankrupt's estate, do not lessen nor affect the rights of the United States under Rev. St. § 3466 (U. S. Comp. St. 1901, p. 2314), which provides that, "whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied," nor the right of a surety in a bond given by the bankrupt to the United States who pays the money due on such bond to be subrogated to a "like priority" under the provisions of section 3468.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 349;* Subrogation, Cent. Dig. § 18; Dec. Dig. § 7.*]

8. BANKRUPTCY (§ 345*)—PRIORITY—STATUTES—CONSTRUCTION—"PERSON."
    The United States is not a "person" within the meaning of Bankr. Act July 1, 1898, c. 541, § 64, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447).
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*

    For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of the Pittsburgh Industrial Iron Works, bankrupt, of which the Guarantee Title & Trust Company was trustee. The Title Guaranty & Surety Company appeals from an order denying priority to its claim. Reversed.

Walter Lyon, John P. Hunter, and George J. Shaffer, for appellant.
R. T. M. McCready, for appellee.
Samuel I. Spyker and Clement W. Flynn, for wage claimants.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge.   In the court below the Pittsburgh Industrial Iron Works, the bankrupt, was so adjudged on November 21, 1907, and the Guarantee Title & Trust Company, its trustee, was thereafter elected.   On October 8, 1907, the Title Guaranty & Surety Company, hereafter called the "surety," became surety for the bankrupt on a bond to the United States conditioned that the bankrupt comply with a bid for boilers it was furnishing to the government. On acceptance of such bid by the government, the bankrupt defaulted. On June 2, 1908, suit was brought by the United States on the bond against the surety.   Of this the trustee was duly notified and required

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to defend. On November 30, 1908, judgment was recovered by the plaintiff against the surety for $5,018.50, with costs, and on December 15, 1908, the surety paid such judgment. On December 26, 1908, the account of the trustee showing a balance of $9,440.89 was filed, and a decree was entered distributing said amount, after payment of expenses, to wage claims duly proved; payment of which has not been made pending these proceedings. On December 29, 1908, the surety filed a petition, setting forth the above facts, and alleging that under the acts of Congress the undertaking of the bankrupt became and was a debt to the United States entitled to priority over all claims against the bankrupt, and, the surety having paid such debt to the United States, it became entitled under the acts of Congress to like priority. On December 30, 1908, formal proof of such preferred claim was made by the surety, and on January 5, 1909, it filed exceptions to the decree of distribution. On March 17, 1909, the referee filed a report and opinion reported in 57 Pittsb. Leg. J. 254, wherein he refused to award priority to the surety over the wage claimants and dismissed the exceptions. Thereafter the court below on May 29, 1909, following the opinion of the referee, confirmed the report. Thereupon the surety, assigning for error such action of the court, entered the present appeal.

The contention of the appellant is that the United States is given priority by Rev. St. § 3466 (U. S. Comp. St. 1901, p. 2314), over all claimants for the debt owing to it. That statute provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

And that like priority is given to the surety for such debt by Rev. St. § 3468 (U. S. Comp. St. 1901, p. 2314), which is:

"Whenever the principal in any bond given to the United States is insolvent, or whenever such principal, being deceased, his estate and effects which came to the hands of his executor, administrator or assignee, are insufficient for the payment of his debts, and in either of such cases any surety on the bond, or the executor, administrator or assignee of such surety pays to the United States the money due on such bond, such surety, his executor, administrator or assignee shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond in law or in equity, in his own name, for the recovery of all moneys paid thereon."

The effect of these statutes, standing alone, is conceded; but it is contended the general priority therein conferred is restricted by section 64 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which provides, as is argued, first, for a primary priority to the United States for nothing but taxes in clause "a," which provides:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

And for a secondary priority for other debts under clause "b," which provides:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be: * * * (4) Wages due to workmen, clerks, traveling or city salesmen or servants which have been earned within three months before the date of commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

To sustain the contention of the appellee it must be held: First, that the United States is included in the word "person" in subdivision 5, viz., "debts owing to any person," etc.; or, secondly, that the designation of taxes under clause "a," viz., "all taxes legally due and owing by the bankrupt to the United States," etc., as entitled to priority, was an exclusion of priority to the United States in all other matters.

On the first point the authorities are uniform that the sovereign power is not included by the general language of a statute. In Dollar Savings Bank v. United States, 19 Wall. 239, 22 L. Ed. 80, it is said:

"It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. * * * The rule thus settled respecting the British crown is equally applicable to this government and has been applied frequently in the different states, and practically in the federal courts."

Moreover, that such was the intent of the act will appear in section 1, cl. 19, where a more inclusive meaning is given to the word "person." Such inclusion goes no further than "corporations * * * and officers, partnerships and women." It therefore unquestionably follows that by the passage of the bankrupt act there was no intent, by the use of the word "person," in subdivision 5, to restrain, diminish, or affect the existing priority given to debts of the United States under Rev. St. § 3466. And as the surety claims, not on the general right of a surety under the law against a defaulting principal, but on its right of statutory subrogation under Rev. St. § 3468, to "the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States," it is evident that its right, like the right of the United States, is unqualified by the bankrupt law. The clear purpose of the two sections in question is to confer and enforce the statutory rights of the United States for the benefit of the surety, and unless the principle here shown to apply to the United States is

also extended to the paying surety, the latter is not awarded "the like priority * * * as is secured to the United States."

On the second question, viz., that the designation of taxes under clause "a," viz., "all taxes legally due and owing by the bankrupt to the United States," etc., as entitled to priority, was an exclusion of priority in all other matters, we are, in view of the case of Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513, equally clear. In that case the statutory priority of the United States under Rev. St. § 3466, was asserted and the effect on that statute of the bankrupt law of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), which gave a priority to "all debts due to the United States, and all taxes and assessments under the laws thereof," was discussed. It was there said:

"The United States are in no wise bound by the bankrupt act. The clause above quoted is in pari materia with the several acts giving priority of payment to the United States, and was doubtless put in to recognize and reaffirm the rights which those statutes give, and to exclude the possibility of a different conclusion."

Presumably, with this decision before it, Congress passed the present act, and, in the light thereof, the omission in the act of 1898 of words expressly giving priority to debts due to the United States had no more significance than the presence of such words in the act of 1867. In either case the statute did not affect the rights of the United States under Rev. St. § 3466, to lessen them in any respect. In the absence of any such express provision in the bankrupt law, we cannot inject one into it by construction, for, as said' in United States v. Herron, 20 Wall. 251, 22 L. Ed. 275:

"Sanctioned as that principle is by two express decisions of this court, it would seem that further discussion of it is unnecessary, as it has never been questioned by any well-considered case, state or federal, and is founded in the presumption that the Legislature, if they intended to divest the sovereign power of any right, privilege, title, or interest, would say so in express words; and, where the act contains no words to express such an intent, that it will be presumed that the intent does not exist."

It follows therefore that the claim of the surety must be awarded priority in the distribution of the fund in the hands of the trustee.