## UNITED STATES v. WOOD et al.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 205.

1. **Bankruptcy ⬥293(1)—Jurisdiction of bankruptcy court over claim of priority is exclusive.**

    The jurisdiction of the courts of bankruptcy in the administration of the estate of a bankrupt is complete and exclusive over all other courts, and includes the preferences and priorities to be accorded to claims presented for allowance and payment in regular course.

2. **Bankruptcy ⬥293(1)—Claim of United States to priority, except for taxes, must be presented to bankruptcy court.**

    Under Bankruptcy Act 1898, § 64b (Comp. St. § 9648), allowing priority to debts owing any person who by the laws of the state or the United States is entitled to priority, which differs from the provision of earlier acts requiring payment of debts due the United States in preference to all claims, except the costs of bankruptcy proceedings, and which act of 1898 expressly excepted from discharge taxes due the United States, without mentioning other debts due the United States, the United States is required to present its claim against a bankrupt to the trustee in bankruptcy, and therefore a court of equity is without jurisdiction of an independent suit by the United States to compel the trustee to pay its claim, under Rev. St. § 3466 (Comp. St. § 6372), in preference to all other claims.

3. **Bankruptcy ⬥349—Claim against bankrupt in favor of fleet corporation is not entitled to preference; "claim of the United States."**

    A claim against a bankrupt estate in favor of the United States Shipping Board Emergency Fleet Corporation, which was created under Shipping Act Sept. 7, 1916 (Comp. St. §§ 8146a—8146r), and the Code of the District of Columbia, and reorganized under the amendments to that act by the Merchant Marine Act of 1920, is not a claim of the United States, but of the corporation, and is therefore not entitled to preference under Rev. St. § 3466 (Comp. St. § 6372).

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the United States against Roger B. Wood, as trustee in bankruptcy of the Eastern Shore Shipbuilding Corporation, and others. From a decree dismissing the complaint, the United States appeals. Affirmed.

This is a suit of a civil nature in equity, brought by the United States to enforce a claim upon personal property within the Southern district of New York, to wit, money in the hands of the defendant Roger B. Wood, as trustee in bankruptcy for defendant Eastern Shore Shipbuilding Corporation. The defendant Wood is a citizen of the state of New York and an inhabitant of the Southern district of New York. The defendant Eastern Shore Shipbuilding Corporation, hereinafter called the Shipbuilding Corporation, is a corporation existing under the laws of the state of Delaware.

The defendant United States Shipping Board Emergency Fleet Corporation, hereinafter called the Fleet Corporation, is a corporation created under the laws of the United States, to wit, the Shipping Act of September 7, 1916 (39 Stat. pt. 1, c. 451, p. 728 [Comp. St. §§ 8146a–8146r]), and the Code of the District of Columbia. It continued to act under the Act of 1916 until after the passage by Congress of the Act of June 5, 1920, known as the Merchant Marine Act of 1920. Under that act it was reorganized, and has since acted with all the powers and duties conferred upon it by the Shipping Act of 1916, as amended by the Merchant Marine Act of 1920. 41 Stat. pt. 1, c. 250, p. 988.

The complaint alleged that on August 22, 1918, the Fleet Corporation, "representing the United States," entered into a contract with the Shipbuilding Corporation for the construction of six wooden harbor tugs, for each of which the latter corporation was to receive $145,000. It alleged that on March 20, 1919, the Shipbuilding Corporation was adjudicated a bankrupt in the Southern district of New York and that at that time none of the tugs was completed. It alleged that the Shipbuilding Corporation had been paid by the Fleet Corporation $428,017.72 on account under the contract. It alleged that the Fleet Corporation, subsequent to the bankruptcy, completed the boats and took them away, and that the fair value of the tugs at the time of the taking was $100,000, leaving the balance of the claim $328,017.72. The complaint also alleged that this debt is due to the United States; that the Fleet Corporation was its agency; that the United States are entitled to prior payment of this debt by virtue of section 3466 (erroneously cited as section 3688) of the Revised Statutes (Comp. St. § 6372); that the trustee in bankruptcy has some $80,000 in his hands and that such fund is the only asset of the estate. The prayer for relief is that the fund in the hands of the trustee in bankruptcy be applied in payment of the debt due from the Shipbuilding Corporation to the United States, and that the United States have judgment against the Shipbuilding Corporation for any deficiency.

Upon the filing of this complaint the trustee in bankruptcy moved the District Court to dismiss it upon the following grounds: "(1) It appears on the face of said complaint that this court has no jurisdiction to hear and determine this suit. (2) It appears on the face of said complaint that this court has no jurisdiction of the subject-matter of this suit. (3) The said complaint does not state sufficient facts to constitute a valid cause of action in equity."

The motion to dismiss was duly argued, and an order was entered on September 21, 1922, dismissing the complaint; the dismissal "being upon the sole ground." as stated in the order, "that it appears on the face of the said complaint that this court, sitting as a court of equity, is without jurisdiction of the subject-matter of this suit."

On December 4, 1922, the United States filed its petition for appeal, and asked that the appeal should operate as a supersedeas, and that an order be granted restraining the trustee in bankruptcy from making any distribution of the funds in his hands as such trustee. On the same day an order was entered in the District Court allowing the appeal, and providing that during the pendency of the appeal, and until the coming down of the man-

date from the Circuit Court of Appeals, the defendant Wood, as trustee, be restrained from making any distribution of the funds in his hands by which the right claimed by the United States of America in its bill of complaint herein to obtain payment in full of the amount set forth in the bill may be affected.

William Hayward, U. S. Atty., of New York City (James M. Beck, Sol. Gen., of Washington, D. C., Henry M. Ward, Sp. Asst. Atty. Gen., of counsel), for the United States.

Rosenberg & Ball, of New York City (Godfrey Goldmark, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The sole question which this case presents is whether the United States is entitled to maintain a suit in equity against a trustee in bankruptcy to enforce its alleged priority or preference to be paid first out of the assets in his hands; the assets being insufficient to pay all the indebtedness of the bankrupt.

[1] There can be no doubt that if a private litigant, claiming a right to priority of payment out of the assets of a bankrupt, had come into a court of equity to assert his right to a preference, the District Court would have no jurisdiction to entertain the bill. Under the Constitution and the existing Bankruptcy Act, enacted by the Congress, the jurisdiction of the courts of bankruptcy in the administration of the estates of bankrupts is complete and exclusive of all other courts. As the Supreme Court declared in United States Fidelity Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055, the jurisdiction of the bankruptcy courts in all proceedings in bankruptcy "is intended to be exclusive of all other courts," and such proceedings include, among others, "the determination of the preferences and priorities to be accorded to claims presented for allowance of payment in regular course." It continued:

"A distinct purpose of the Bankruptcy Act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks."

The doctrine thus laid down in United States Fidelity Co. v. Bray, supra, was declared in a suit to which the United States was not a party. Whether the principle stated is applicable to the United States was not before the court in that case. It is, however, directly presented in this one, and must be determined herein, in so far as this court has the power to do so.

The United States attorney commenced this suit upon the theory that the law laid down in United States Fidelity Co. v. Bray, supra, does not apply to suits brought by the United States in cases in which it is entitled to assert a right to a priority of payment. In support

of this position reliance is placed upon Lewis, Trustee, v. United States, 92 U. S. 618, 23 L. Ed. 513, which it is claimed is squarely in point and decisive of the question involved. The facts in that case may be briefly stated. On October 19, 1873, the firm of Jay Cooke, McCulloch & Co., of London, England, were indebted to the Navy Department of the United States for a balance placed in their hands for disbursement. Seven members of that firm were also members of the American firm of Jay Cooke & Co., which had one additional member not a member of the English firm. The United States held certain collateral for the security of the debt. On November 26, 1873, all the persons composing the American firm were adjudicated bankrupts, and Lewis was appointed trustee of the estate of the individual bankrupts and of the firm. The assets were insufficient to pay all the indebtedness, and suit in equity was brought by the United States against the trustee to enforce its preference. It was held that the United States was entitled to the payment of its debt out of the separate property of the individual members of the firm in preference and priority to all other debts due by them or either of them or by the firm, and it was further held that the United States was under no obligation to prove its debt in the bankruptcy proceedings or pursue the partnership effects of the firm in London before filing its bill in equity against the trustee in the Circuit Court, and that that court had original jurisdiction of the case thereby made, although the fund arose and the trustee was appointed under the Bankruptcy Act.

The Bankruptcy Act of 1867 (Revised Statutes, p. 981, § 5101), declared that the following claims should be entitled to priority and to be first paid in full in the following order:

"First. Fees, costs, and expenses of suits, and of the several proceedings * * * under this title, and for the custody of property, as herein provided.

"Second. All debts due to the United States, and all taxes and assessments under the laws thereof."

There was also in force at this time the Act of March 3, 1797 (1 Stat. 515, now R. S. § 3466 [Comp. St. § 6372]). The court sustained the right to bring a plenary suit, because it held that the United States obtained its right to priority from the Bankruptcy Act of 1867 and from the Act of 1797. The first act in section 28 provided that after administration expenses were paid there should be paid all debts due to the United States and all taxes and assessments under the laws thereof. The latter act (section 5) enacted that where there is a debt and bankruptcy the United States should have priority of payment. "Neither statute," said the court, "contains any qualification; and we can interpolate none. Our duty is to execute the law as we find it; not to make it." The court in the course of its decision also said:

"The United States are in no wise bound by the Bankruptcy Act. The clause above quoted is in pari materia with the several acts giving priority of payment to the United States, and was doubtless put in to recognize and reaffirm the rights which those statutes give, and to exclude the possibility of a different conclusion. That the claim of the United States was not proved in the bankruptcy proceedings in question is therefore quite immaterial in

this case. United States v. Herron, 20 Wall. 251; Harrison v. Sterry, 5 Cranch, 289. The case presented is that of a trust fund, a trustee holding and a cestui que trust claiming it. This gave the Circuit Court original and plenary jurisdiction. That the fund arose and the trustee was appointed under the Bankruptcy Act did not affect the right of the United States to pursue both by the exercise of the jurisdiction invoked. The same remedies are applicable as if the fund had arisen and the trustee had been appointed in any other way. 12 Pet. supra; Thomson v. Smith, 2 Wheat. 425."

The principle announced in Lewis v. United States, supra, and in the earlier case of United States v. Herron, 20 Wall. 251, 22 L. Ed. 275, to the same effect, were followed in this circuit in United States v. Barnes (C. C.) 31 Fed. 705, decided in 1887, in which Judge Wallace called attention to the hardship of the rule. In that case an assignee in bankruptcy was held personally liable for distributing the assets after having knowledge of the claim of the United States. He said:

"It may seem unjust that the government should stand by while the estate of its insolvent debtor is being distributed. by an assignee pursuant to the directions of a court of bankruptcy, without asserting its right of priority. and, when the assignee has made final distribution, pursue him, and compel him to make good out of his own pocket what it might have realized from the estate if it had proved its claim in season. It is not in the power of the assignee to set the government in motion, because the bankrupt law does not provide any machinery by which he can do so; and unless the government elects to assert its claim in the bankruptcy proceeding, the distribution of the estate may be protracted, and those who are entitled to share in the assets be delayed. But, however real may be the hardship, the remedy is with the legislative authority, and not with the courts. Congress has seen fit not to require the government to make itself a party to a bankruptcy proceeding against its debtor, and assignees and creditors must abide the consequences."

It is possible that the above criticism influenced the Congress when it came to the enactment of the Act of 1898 to draft it upon different lines. However that may be, the Act of 1898 certainly differs very materially from the previous acts. The doctrine laid down in Lewis v. United States must control this case, unless there has been made subsequently some change in the statutory law which renders the doctrine of the Lewis Case inapplicable to the case now before the court.

The present Bankruptcy Act was passed in 1898. 30 Stat. c. 541, p. 544. And in Guarantee Company v. Title Guaranty Company, 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706, the court calling attention to certain differences in the provisions of that act as compared with the Act of 1867 in respect to the priorities to which the United States is entitled under the Act of 1898, held that the United States was bound by the Act of 1898 by the provisions of section 64 of that act (Comp. St. § 9648), and that labor claims have priority over debts due to the United States, except in the case of taxes legally due and owing by the bankrupt. The court in that case reversed the Circuit Court of Appeals in the Third Circuit which held (174 Fed. 385, 98 C. C. A. 603) that the United States was not bound by the Bankruptcy Act, and that under the Act of 1797 (now Revised Stat-

utes, § 3466) the government was entitled to a prior payment irrespective of the Bankruptcy Act.

This court in the recent case of Matter of Anderson, 279 Fed. 525, held the United States bound by the provisions of the Bankruptcy Act of 1898, and that the case of Lewis v. United States was not applicable. In that case the trustee in bankruptcy had obtained an order in the bankruptcy court directing the United States to show cause why it should not be barred from any claim for taxes, or in the alternative that it should file such a claim within the stated time. The government claimed that it was not bound by the provision of the Act of 1898 and could not be forced to file its claim. This court affirmed the order entered in the bankruptcy court and held that the United States was obliged to file its claim. We pointed out that section 64a of the Act of 1898 was a departure from the principles of public policy theretofore prevailing as to the rights of the sovereign which were recognized in the prior Bankruptcy Acts of 1800, 1841, and 1867. We declared that:

"The United States must file its claim for taxes as any other creditor, if it desires to share in the estate, and the court must determine any question arising as to the amount or legality of such tax. It cannot stand by, as it did here, after permission having been granted to file its claim, and expect to subsequently collect the tax from the bankrupt or his trustee. To permit such a procedure would make it impossible to say when there could be a winding up of the bankruptcy proceedings and a distribution of the assets."

We thereupon affirmed the order barring the United States from participating in the estate.

This court in the case of In re Tidewater Coal Exchange, 280 Fed. 648, had before it the claim which the Director General of Railroads had filed in the bankruptcy court in which he claimed a priority as representing the United States and was denied a right to vote at a creditors meeting. It was not denied that the Director General was entitled to assert whatever rights the United States possessed. The court below held that the priorities of the United States were dependent upon the Bankruptcy Act of 1898 as established in section 64b(5), which reads as follows:

"Debts owing any person who by the laws of the states or the United States is entitled to priority."

That court, after referring to the provision quoted, said:

"This language fits precisely, because the United States is a corporation sovereign, and corporations are 'persons' under section 1a (19). Moreover, so far as any one has found, it is not only a 'person,' but the only 'person,' * * * entitled to priority 'under any law of the United States.' If this is not an express mention of the United States in the statute, it is a very clear indication that its priorities are dependent upon the Bankruptcy Act. I conclude, therefore, not only that this is true, but that Revised Statutes, § 3466, applies only because it is incorporated by reference, just as all laws of the states in pari materia are incorporated by the same section."

This court on appeal declared that we had no doubt that the United States was to be regarded as a person within the meaning of clause 5, subdivision (b), section 64, of the Bankruptcy Act of 1898, and we called attention to the fact that in the Matter of Anderson, supra,

we had held the United States bound by the terms of the Bankruptcy Act of 1898. We thereupon affirmed the order of the court below.

[2] In view of the fact that the United States is specifically mentioned in the Bankruptcy Act of 1898, and that provision is therein made for three classes of claims owing to the United States, viz. taxes, debts owing as penalties, and debts generally, and that it is specifically declared that debts, except for taxes, shall be discharged, the conclusion is inevitable, as it seems to us, that the United States, like any private litigant, is bound by the provisions of the act. If Congress thought it necessary expressly to except taxes due the United States from the operation of a discharge, the conclusion is irresistible that, if it intended that other debts due to the United States should also be excepted it would have so declared. The omission of any exception of such debts cannot be ignored. It clearly indicates that the purpose was that the bankrupt was to be discharged from provable debts to whomsoever owed except as specified. McPhee v. United States, 64 Colo. 421, 174 Pac. 808. Moreover, this conclusion is further made clear by the provision which declares that debts owing the United States as a penalty shall not be allowed except for the amount of pecuniary loss. This provision shows that Congress, in enacting the law, had in mind debts due to the sovereign and that they were to be allowed in bankruptcy.

[3] We have thus far considered this case upon the assumption that the debt involved was one due to the United States, that being the theory upon which the bill of complaint was filed and the theory upon which the attorney for the United States argued the case in this court. We cannot, however, conclude this opinion without stating our conviction that the theory upon which the bill was filed is wholly erroneous, and that the debt herein involved is not in law a debt due to the United States, and that the complaint does not state a cause of action. The debt set forth in the complaint is one due, not to the United States, but to the Fleet Corporation as principal and independent contractor, as this court held in Re Eastern Shore Shipbuilding Corporation, 274 Fed. 893, 902. In that case the Fleet Corporation filed its claim in the bankruptcy court in its own name, but put it forward as an instrumentality of the government of the United States, and that as such the claim was entitled to a preference under the Bankruptcy Act of 1898. This court held that the claim advanced was untenable, and that the debt was not entitled to a preference, in that it was one due to the Fleet Corporation, and not to the United States, and on that account we declined to consider the question whether the United States, under the Bankruptcy Act, is entitled to the prior payment of ordinary debts due to it as against the general creditors of the bankrupt.

The case went to the Supreme Court of the United States and was considered with the two other cases—Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation and Astoria Marine Iron Works v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762. The two cases last named involved the question whether

the Fleet Corporation so far embodied the United States that the suits should have been brought in the Court of Claims. The court divided upon that question, the majority holding that it was not necessary that the suits should have been brought in the Court of Claims. But in the case which went up from this court there was a unanimous opinion in affirmance of the conclusion which we had reached that the Fleet Corporation stood like other creditors and that the debt due to it was not to be preferred. The Chief Justice, who wrote the dissent in the other two cases, Mr. Justice Van Devanter and Mr. Justice Clarke concurring with him, said in speaking of the case which went up from this court:

"As to the preference claimed against a bankrupt in No. 526 by the Fleet Corporation, I concur in the conclusion of the court that it cannot be allowed under the statute as to preferences in bankruptcy, because I do not think it extends to claims of the United States, except those for taxes."

The case was decided on May 1, 1922, and is published in 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762. And in accordance with the doctrine announced by the Supreme Court in United States Fidelity Co. v. Bray, supra, in which case, as in this, a bill in equity had been filed seeking a decree affecting the fund in the hands of a trustee in bankruptcy, the whole matter is, in our opinion, within the exclusive jurisdiction of the bankruptcy court, and the District Court was without jurisdiction in equity to entertain the bill.

Decree affirmed.